[Civ. No. 19583. Second Dist., Div. One. Aug. 11, 1953.]

GERTRUDE SAPP, Petitioner, v. SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent.

[Civ. No. 19690. Second Dist., Div. One. Aug. 11, 1953.]

MAXWELL SAPP et al., Petitioners, v. SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent.

N. E. Youngblood for Petitioner in Civ. No. 19583.

Lester Wm. Roth and Cohen & Roth for Petitioners in Civ. No. 19690.

No appearance for Respondent.

SCOTT (Robert H.), J. pro tem.—Two proceedings herein are considered together. Although each is directed to the superior court as respondent, the real parties in interest are Gertrude Sapp and Maxwell Sapp. Gertrude Sapp seeks a writ of prohibition and Maxwell Sapp seeks a writ of mandate, both petitions relating to one case in the superior court which is the divorce case between the parties, being numbered No. 396535 in that court.

From the record of the case, it appears that the parties had married in October, 1948, and had separated in December, 1949, after a little more than 14 months of marriage. On April 5, 1950, Maxwell Sapp as plaintiff filed suit for divorce against Gertrude Sapp as defendant, charging mental cruelty in general terms. An amended complaint was later filed particularizing the conduct upon which the charge was based. Mrs. Sapp filed an answer to the amended complaint and filed a cross-complaint and later filed an amended cross-complaint against her husband seeking separate maintenance. She filed a further amendment later. David Sapp, the brother of Maxwell Sapp, and Eva Sapp, his mother, were joined as parties cross-defendant and are named in these proceedings because of some interest in property of the principal parties. They answered the amended cross-complaint.

The trial of the case started on November 26, 1951, upon the limited issue concerning the nature, extent and value of community assets. On December 5, 1951, the parties announced that they were prepared to enter into a stipulated judgment which gave the wife $7,500 for her interest in the community property and $2,500 attorneys' fees and costs. Thereupon, the husband withdrew his amended complaint and his answer to the amended cross-complaint. The wife further amended her cross-complaint for separate maintenance so as to seek divorce and introduced evidence in support of her cause of action for termination of the marriage. An interlocutory decree of divorce was granted to Gertrude Sapp, embodying the above provisions of the stipulation concerning property. This interlocutory decree was entered December 28, 1951.

On June 23, 1952, Gertrude Sapp filed a notice of motion for an order vacating and setting aside the interlocutory judgment of divorce therein and reopening said cause for further hearing. The notice stated that the motion would be made on July 11, 1952. In the meantime no motion for a new trial had been made and no notice of appeal had been filed.

In affidavits of Gertrude Sapp and her attorney fi'ed in support of her motion it was claimed that her husband, through his attorney, had made false representations at the trial which had induced her to enter in the stipu'ated judgment and she asked that the judgment be set aside and the case reopened because of alleged extrinsic fraud on the part of her husband. More than six months had elapsed between the

entry of the interlocutory judgment on December 28, 1951, and the date of the motion on July 11, 1952.

On November 14, 1952, Gertrude Sapp's motion was granted. On January 7, 1953, Maxwell Sapp, together with his brother and mother, filed notice of appeal from the order of November 14, 1952, granting Gertrude Sapp's motion to set aside the judgment and reopen the case. The record of this appeal has not been filed in the reviewing court. Appellants have indicated their readiness to abandon this appeal which they can do under rule 19a, Rules on Appeal, by filing a written abandonment of the appeal in the office of the clerk of the superior court. This will operate to dismiss the appeal and to restore the jurisdiction of the superior court.

On January 13, 1953, Gertrude Sapp obtained and served on Maxwell Sapp an order to show cause for support and attorneys' fees and costs on appeal, to be heard on January 23, 1953.

On January 21, 1953, Maxwell Sapp and David Sapp served and filed in the trial court notice of motions to vacate the order of November 14, 1952, and to enter final judgment, said motions to be heard on January 23, 1953. Gertrude Sapp appeared specially for the purpose of objecting to the court's jurisdiction to consider the motions because of the earlier notice of appeal. Hearing on the motions was postponed and waits determination of the proceedings now before this court.

Gertrude Sapp now seeks a writ of prohibition which would preclude consideration by the trial court of the motions last mentioned and would restrain further proceedings therein until the appeal has been decided.

Maxwell Sapp, David Sapp and Eva Sapp ask that the trial court be ordered to enter the final decree *nunc pro tunc* as of January 23, 1953, and be restrained from doing acts inconsistent therewith.

We have concluded (1) that the trial court was without legal authority to make its order of November 14, 1952, undertaking to set aside the interlocutory judgment and to reopen the case; (2) that Maxwell Sapp is entitled to have a final decree of divorce entered *nunc pro tunc* as of January 23, 1953; and (3) that Gertrude Sapp by the foregoing determinations is not precluded if she be so advised from instituting an action in equity seeking to be relieved of the effect of the stipulated judgment on the ground of extrinsic fraud, and asking that she have her rights as to the property only deter-

mined in the light of the facts as they existed on the date of the granting of the interlocutory decree.

The order of November 14, 1952, was not an order granting a new trial. ▮ It was not an order made in response to a motion made within the six months of the interlocutory decree, so it could not be regarded as having been made under powers granted by section 473 of the Code of Civil Procedure.

It is suggested that the trial court had "inherent power" to make such an order because of alleged extrinsic fraud of the husband. The case of *King* v. *Superior Court*, 12 Cal. App.2d 501, 506 [56 P.2d 268], relied on by appellant does not in our opinion furnish adequate support for this suggestion.

At the trial of the case now before us there were two separate issues presented for determination by the court: (1) the marital status of the parties; (2) their respective property rights.

As to the determination of the issue of marital status we find that Gertrude Sapp was the one to whom the divorce was granted, on testimony which she gave and produced. She makes no claim that it was fraudulent or incorrect on the issue of whether she should continue to be the wife of Maxwell Sapp. Both parties agreed in effect that if mutual love, confidence and respect had once given vitality to their marriage it no longer existed. Gertrude Sapp asked for a judicial recognition of the fact that the marriage was dead, and Maxwell Sapp acquiesced. ▮ Although marriage is a personal relation arising out of a civil contract (Civ. Code, § 55), persons who are married and who desire to end that relationship must come into court to secure a divorce instead of being permitted to end it by mutual agreement. ▮ The laws relative to marriage and divorce (Civ. Code, §§ 55-181) have been enacted because of the profound concern of our organized society for the dignity and stability of the marriage relationship. This concern relates primarily to the status of the parties as husband and wife. The concern of society as to the property rights of the parties is secondary and incidental to its concern as to their status. In the case before us there were no children and no problem of custody is involved.

The decision of the trial court granting the interlocutory decree had become final before the order was made purporting to set aside the decree and reopen the case. (*Bancroft* v. *Bancroft*, 178 Cal. 367, 368 [173 P. 585]; *Deyl* v. *Deyl*, 88 Cal.App.2d 536, 539 [199 P.2d 424]; 9 Cal.Jur. 762.) This

order setting aside the decree and reopening the case was not sought because of any claim that vitality had been restored to the marriage, or because any fraud or error had clouded the evidence relating to the change of status of the parties. It was asked for only because the wife asserted that the husband had fraudulently concealed property in which she had a community interest and that she is entitled to a larger share than was awarded to her under the judgment to which she had stipulated.

Her notice of motion to set aside the interlocutory judgment and to reopen the case stated that it was upon the ground that the judgment resulted from a stipulation after approximately seven days of trial as a contested matter, that Maxwell Sapp had fraudulently concealed valuable community property, which he knew about and she did not, and that she relied upon his statements, representations and testimony that all community property had been disclosed and otherwise she would not have entered into the stipulation and "that said stipulation occurred through her mistake, inadvertence, surprise or excusable neglect." Affidavits in support of the motion were filed by Gertrude Sapp and by her attorney. The latter's affidavit disclosed that about two months before the trial he had spent eight and one-half hours' continuous time taking depositions of Maxwell Sapp and David Sapp concerning their property and business. It further declared that these men at the trial produced a cash receipt book which they had previously denied to be in existence.

It is thus readily apparent that the trial of the divorce case between the parties was an adversary proceeding in which the parties and their attorneys placed little if any trust or confidence in the other side. It is claimed by Gertrude Sapp that there was perjury or concealment by her husband, and that it was such extrinsic fraud as to vest the trial court with inherent power to vacate the interlocutory judgment and reopen the case.

The case of *Aldrich* v. *Aldrich*, 203 Cal. 433 [264 P. 754], is brought to our attention with the suggestion that it is authority for the order of November 14, 1952, in this case. In the cited case the trial court's refusal to grant a motion by an aggrieved wife to set aside a decree of divorce granted to her husband was reversed on appeal. The husband had committed a fraud on the court by filing a false affidavit in publication of summons giving an erroneous address for defendant wife, although he knew where she was living, and

since there was no personal service and defendant received no notice of the action she was prevented from protecting her interests. In the cited case the court held (p. 437): ''The limitation of time prescribed by section 473 of the Code of Civil Procedure is inapplicable here. In the case of *McGuinness* v. *Superior Court,* 196 Cal. 222 [40 A.L.R. 1110, 237 Pac. 42] it was held that a trial court has inherent power to set aside a judgment obtained through a fraud committed upon it, and its right so to do is not derived from section 473 of the Code of Civil Procedure nor limited to the time therein specified.''

But that factual situation is substantially different from the instant case in which we find that the spouse asserting the fraud is the one who prevailed in the determination of the principal issue, and that she now complains of conduct of the cross-defendants concerning the secondary issue of property. She had been in court with her lawyer for seven days, and if what she received was less than that to which she now believes she is entitled it is not because she was denied her day in court or because the trial court decided against her on controverted issues of fact, but because she entered into a stipulation for a judgment with her adversaries. She now asserts that they have not freely and fully disclosed all the information which she sought to obtain from them.

The terms ''intrinsic'' and ''extrinsic'' fraud or mistake are generally accepted as appropriate to describe two different categories of cases. It is necessary to examine the facts in each case in the light of the policy that a party who failed to assemble all her evidence at the trial should not be privileged to relitigate a case, as well as the policy permitting a party to seek relief from a judgment entered in a proceeding in which she was deprived of a fair opportunity fully to present her case. The latter policy applies when a party's adversary, in violation of a duty arising from a trust or confidential relation, has concealed from her facts essential to the protection of her rights, even though such facts concerned issues involved in the case in which the judgment was entered. The failure to perform the duty to speak or make disclosures which rests upon one because of a trust or confidential relation is obviously a fraud, for which equity may relieve from a judgment thereby obtained, even though the breach of duty occurs during a judicial proceeding and involves false testimony, and this is true whether *such fraud be regarded as extrinsic or as an exception to the extrinsic*

*fraud rule* (emphasis added).  (*Jorgensen* v. *Jorgensen,* 32 Cal.2d 13, 19 [193 P.2d 728].)

█ To set the interlocutory judgment in this case aside would be manifestly inequitable for the further reason that it would raise the questions of (1) how much, if any, additional community interest Gertrude Sapp might have in property acquired by Maxwell Sapp between the date of the original interlocutory judgment which was thus vacated and some future date when a new interlocutory judgment might be granted, and (2) how much support, and additional attorneys' fees and costs might be required of Maxwell Sapp for his wife's benefit, and (3) how much of an obstacle to free and successful enterprise on the part of Maxwell Sapp it would be if he were thus restored to the status of a man married to a hostile spouse.

█ Whatever rights Gertrude Sapp may have it would seem that they should be determinable as of the date of the interlocutory judgment already granted.  It may be that she can have them adjudicated in an independent action in equity. (*Scott* v. *Dilks,* 47 Cal.App.2d 207, 209 [117 P.2d 700].)  It is not necessary that the divorce decree be set aside in whole or in part.  (*Milekovich* v. *Quinn,* 40 Cal.App. 537, 545 [181 P. 256]; *Taylor* v. *Taylor,* 192 Cal. 71 [218 P. 756, 51 A.L.R. 1074].)

The cases of *Westphal* v. *Westphal,* 20 Cal.2d 393 [126 P.2d 105], and *Gale* v. *Witt,* 31 Cal.2d 362 [188 P.2d 755], and the earlier cases of *Flood* v. *Templeton,* 152 Cal. 148 [92 P. 78, 13 L.R.A.N.S. 579], and *Caldwell* v. *Taylor,* 218 Cal. 471 [23 P.2d 758, 88 A.L.R. 1194], distinguish between intrinsic and extrinsic fraud, and it might be considered that they cast a doubt on Gertrude Sapp's right to relief even in such an independent action in equity.  The cases cited and many others must be considered in deciding whether she is entitled to the relief which she seeks.  But the language above emphasized in the case of *Jorgensen* v. *Jorgensen, supra,* and written by the same justice who was the author of the opinion in the case of *Westphal* v. *Westphal, supra,* supports our conclusion that although Gertrude Sapp is not entitled to have the divorce set aside and Maxwell Sapp is entitled to have a final decree entered in the divorce case, our adjudication of the matters now before us is not intended to and does not preclude an independent suit in equity brought by her seeking to assert any right she may claim to have in additional property.

In the case of *Jorgensen* v. *Jorgensen, supra* (32 Cal.2d 13), the court further says (p. 21): "As manager of the community property the husband occupies a position of trust (Civ. Code, §§ 172-173, 158) which is not terminated as to assets remaining in his hands when the spouses separate. It is part of his fiduciary duties to account to the wife for the community property when the spouses are negotiating a property settlement agreement. The concealment of community property assets by the husband from the wife in connection with such an agreement is therefore a breach of a fiduciary duty of the husband that deprives the wife of an opportunity to protect her rights in the concealed assets and thus warrants equitable relief from a judgment approving such agreement. . . . It is immaterial whether the husband or the wife has submitted the property settlement to the court for approval; the fraud of one spouse in concealing the assets, if not discovered by the other, precludes the latter from protecting his or her rights as to the concealed assets in the divorce proceeding."

The outcome of such an independent action in equity by Gertrude Sapp would of course be dependent upon the facts which she might be able to establish, considered in the light of the law as set out in the many cases dealing with the subject, including, among others, the case of *Cameron* v. *Cameron,* 88 Cal.App.2d 585 [199 P.2d 443].

A judgment in an equitable action of that nature does not set aside the judgment or order attacked but has the effect of holding the one who fraudulently secured the property under it as a trustee for the person defrauded. (*Purinton* v. *Dyson,* 8 Cal.2d 322, 327 [65 P.2d 777, 113 A.L.R. 1230]. See, also, *Boullester* v. *Superior Court,* 137 Cal.App. 193 [30 P.2d 59].)

Mandate is an appropriate remedy to compel the entry of a final decree where the court's duty is plain and unmixed with the exercise of discretionary powers. (*Stewart* v. *Superior Court,* 3 Cal.App.2d 702, 704 [40 P.2d 529].) The date of January 23, 1953, is more than one year after the date of the entry of the interlocutory decree and under sections 132 and 133, Civil Code, Maxwell Sapp is entitled to ask for the entry of the final decree and to have it entered *nunc pro tunc* as of that date.

To effectuate our determination on the matters above considered we have concluded that the following orders should be and are hereby made, conditioned upon abandonment under

rule 19a, Rules on Appeal, by cross-defendants Maxwell Sapp and David Sapp of their appeal in the divorce case in conformity with their indication of readiness to do so:

Petitioner Gertrude Sapp's petition for a peremptory writ of prohibition is denied, and the alternative writ issued is discharged;

Petitioners Maxwell Sapp, David Sapp and Eva Sapp's petition for writ of mandate is granted as follows: Upon receipt of a certificate of the clerk of the trial court that the appeal has been abandoned, a peremptory writ of mandate will issue directing the trial court to vacate its order of November 14, 1952, hereinabove referred to; further ordering it to ascertain whether payments have been made to Gertrude Sapp and others as required by the interlocutory judgment; and further ordering that when the trial court has determined that the payments have been made, it shall enter the final judgment of divorce *nunc pro tunc* as of January 23, 1953.

White, P. J., and Doran, J., concurred.

A petition for a rehearing was denied August 28, 1953, and petitioner's application for a hearing by the Supreme Court was denied October 8, 1953.