[No. D035476. Fourth Dist., Div. One. Sept. 29, 2000.]

MICHAEL J. LAMMERS, Petitioner, v.
THE SUPERIOR COURT OF SAN DIEGO COUNTY, Respondent;
MISCHELLE K. LAMMERS, Real Party in Interest.

## COUNSEL

Law Offices of Sondra S. Sutherland and Sondra S. Sutherland for Petitioner.

Lynn Stock & Stephens, Robert H. Lynn; Gray, Cary, Ware & Freidenrich and Kathryn E. Karcher for Appellate Court Committee of the San Diego

County Bar Association as Amicus Curiae, upon the request of the Court of Appeal, on behalf of Petitioner.

No appearance for Respondent.

Law Offices of Jonathan W. Braverman and Jonathan W. Braverman for Real Party in Interest.

Stephen Temko and Michael Shea for San Diego County Certified Family Law Specialists as Amicus Curiae, upon the request of the Court of Appeal.

## OPINION

**WORK, J.**—This writ proceeding asks us to rule on the constitutional validity of San Diego County Superior Court, Local Rules, Family Law, rule 5.12.J (Rule 5.12.J or the Rule), the family law court "pre-read" rule.[1] Petitioner Michael J. Lammers contends that Rule 5.12.J, on its face and as applied to him in an interim support order to show cause (OSC) proceeding, violated his right to due process under the Fourteenth Amendment of the United States Constitution and article I, section 7, subdivision (a) of the California Constitution. As we shall explain, we hold the Rule is facially constitutional. As to petitioner, we conclude it was misapplied denying him due process; however, any resulting prejudice was cured by the later hearing and modification order. Accordingly, we deny the petition.

### FACTUAL AND PROCEDURAL BACKGROUND

On November 19, 1999, real party in interest Mischelle K. Lammers[2] applied for an OSC regarding child support, spousal support and child custody. Hearing was set for February 15, 2000. She filed a supporting income and expense declaration on February 2. Michael timely filed his income and expense declaration on the next day, as well as his responsive papers on February 8.

---

[1]Subsequent rule references will be to the San Diego County Superior Court, Local Rules, Family Law, unless otherwise specified.

Entitled "Pre-Reading of File by the Court," Rule 5.12.J provides: "Normally the court cannot take a recess to review the court file in detail on the day of the hearing. If counsel wants the court to read a file before the hearing then counsel shall notify opposing counsel of the request. Counsel shall also notify the calendar clerk of the department in which the matter is calendared no later than noon on the day before the hearing. The pre-read request shall include a designation of all relevant documents filed by both sides. Where counsel requests the court read more than eight documents, counsel shall make arrangements with the calendar clerk for counsel to place yellow tags on the documents to be read. If opposing counsel objects to the request for the pre-read, opposing counsel shall notify the calendar clerk for the department of the specific objection. This will not, however, prevent the pre-read."

[2]For the sake of convenience, we will refer to the parties by their first names. We intend no disrespect.

At the February 15 hearing, Mischelle's attorney estimated the matter would take 20 minutes. The court noted that nobody had requested a pre-read and questioned whether the matter could be completed in 20 minutes. The parties' attorneys assured the court that because they had stipulated to custody, the remaining issues could be completed in 20 minutes. The court then put the matter on its 20-minute calendar. When the matter was called, argument of counsel revealed there were disputed issues of fact as to which there was conflicting evidence in the record. Mischelle's counsel argued Michael's actual monthly income was greater than he represented and that he was hiding income, while Michael's counsel argued Mischelle had deliberately reduced her income warranting a substantial imputed income charge. Mischelle's counsel argued first. When it was Michael's attorney's turn, the court advised her she had approximately five minutes remaining of the 20-minute estimate. She responded, "Well, that's not really fair to my client." The court replied, "Of course it's not fair." The following colloquy ensued:

"THE COURT: Stop. Wait a second. I told you two I didn't think it could be done in 20 minutes. You are asking the court to do the impossible. Next time you ask me for a pre-read, please, and I'll take the time and take it home and pre-read this. I'm not going to do justice in this case

"[MICHAEL'S COUNSEL]: Well, may I ask the court to do a pre-read at this point, because I think that counsel's remarks can be extremely misleading

"THE COURT: You guys wanted an order. I'm going to give you an order. You can do your discovery and come back. It will cost your clients more money, but it's on the wrong calendar. You've taken too long, and I'm a little upset. So go ahead

"[MICHAEL'S COUNSEL]: I haven't said a thing.

"THE COURT: I understand, but you're still on this calendar."

Upon completing her argument, Michael's counsel suggested to the court that if it needed time to read the papers before ruling perhaps it could take the matter under submission. The court rejected the suggestion, declaring she should have made her request earlier. The court then prefaced its findings and orders:

"I apologize to both clients because I'm going to do the best I can, but I didn't get my crystal ball this morning, and I think you're on the wrong calendar. But the orders are going to be without prejudice so that your attorneys can discover the heck out of each other and come back within 30 days. So if I've done harm to anyone in the next 30 days, my apologies to you both equally.

"But based upon what I have at this time before me, based on the 20-minute estimate and calendar and not having the ability or chance to review a file like this to know who's right, who's wrong, or to even read it, it's virtually impossible for the court to do anything but take an educated guess. Those guesses are as follows. . . ." The court then made its factual findings on the disputed issues of Michael's income and Mischelle's earning capacity, which it assessed at the minimum wage, and ordered Michael to pay $1,235 monthly in child and spousal support retroactive to December 1, 1999.

Upon completing its findings and order, Michael's counsel advised the court that its order was "incorrect," requiring her to refile. The following dialogue then occurred:

"THE COURT: Ma'am, did you just tell me my order was incorrect? Did you just do that?

"[MICHAEL's COUNSEL]: Well, the court hasn't even taken the time to read the papers and to look at the documents.

"THE COURT: Excuse me. You didn't ask me to read the papers.

"[MICHAEL's COUNSEL]: Well, Your Honor, I would have thought that the court would have done that automatically when I come into court in the morning, but I would be happy to take a recess to allow the court an opportunity to do that.

"THE COURT: Ma'am, I'm going to give you a warning this time. You look like a nice person. Don't ever tell the court it made an incorrect order. That's just clearly inappropriate. The court does the best it possibly can. It may be too high, but I have done everything I can to give you the benefit.

"So you can come back in here. You can come back, file another one, come back in. But do what you're supposed to do, and let this court have an opportunity to do justice. Prove it to me. . . . Have something for me so that I can put my hand on that. All right? And that's why I made these findings without prejudice, so that you're not hurt later on. You don't have to come up with a substantial change in circumstances."

At the end of the hearing, the court declared: "Just so there's no misunderstanding, just so we understand each other, counsel, the court, this court, does not read these files unless I'm asked to . . . . It's very understandable that you didn't know that but . . . ." Michael's counsel then explained that she had recently moved down from Los Angeles where she had worked in

family court as a research attorney and then entered private practice. She explained that it was her experience the judges always read the papers before the hearing. She then stated that she did not intend to offend the court, but that she was surprised when it had not read the papers resulting in an order she did not expect. Treating her comments as an apology, the court accepted it. The court then explained: "Hold on. Take a look at this calendar. It's a killer. You have one, two, three, four, five out of thirteen that went away, and that happens every single day. Now, you tell me in advance which five are going to stay and which aren't. I cannot possibly pre-read all of these files, and we've already had a half-dozen disappear. It's not humanly possible[. I think j]udges would burn out." After counsel suggested it was possible, the court admonished her to be careful what she said to the next court, especially that one.

On February 18, Michael applied for an OSC requesting the court to set aside its February 15 order as void because it violated his due process rights or, alternatively, to reconsider or modify its prior order. Upon locating Rule 5.12.J, Michael filed a supplemental declaration and points of authorities asserting the Rule unduly impedes a party from being afforded a full and fair opportunity to be heard and violates the due process clauses of the United States and California Constitutions. In an effort to comply with Rule 5.12.J, Michael filed a separate pleading entitled "Respondent's Request for a 'Pre-Read' of Documents in Connection with March 20, 2000 Hearing on Order to Show Cause" that designated the documents to be read for the hearing. On March 17, the formal order on the February 15 hearing was entered, confirming the court's findings were "based on an educated guess." The parties filed their respective responsive declarations and updated income and expense declarations before the second scheduled hearing. Upon notification by the court clerk, Michael's counsel filed a special local court form entitled "Pre-Read Request for Hearing" on April 7, although the Rule is silent in that regard.[3]

At the hearing on Michael's motion, the court declined to set aside its previous orders, finding Michael's constitutional rights were not violated. Specifically, the court reasoned that no pre-read request was made pursuant to Rule 5.12.J; the matter should not have been placed on the 20-minute calendar as rule 5.12.B provides that a 20-minute calendar includes both the presentation of the case and the court's reading of the file; Michael's counsel admitted she was unaware of the court rules; and the heavy caseload caused

---

[3]We note the pre-read request San Diego Superior Court Form SUPCT D-117 (New 5-96) provided by the court and used by Michael is outdated, referring to former rule 1.6 (k). (See, *post*, p. 1319.) Moreover, in light of later filings, Michael failed to redesignate all of those documents he wished the court to pre-read, simply asserting the pre-read was appropriate as required by due process and court request.

local rules to be enacted to accommodate the tremendous demand. The court characterized the order at the time of its making as "very temporary" in nature, inviting the parties to return with an appropriate motion. It then declared: "This court wants to do justice too. It doesn't want to do things on a slipshod basis. I did not have the time at the prior hearing to really go through the file as I would have liked. So at that time I indicated that to both counsel and suggested that they were free to discover what they could and return to the court." The court, however, granted reconsideration and, after expending more than three hours reviewing the file before hearing, entered an order for monthly child and spousal support of $942, retroactive to December 1, 1999.

Michael then filed this petition for extraordinary relief, challenging the constitutional validity of Rule 5.12.J on its face or as applied against him. Specifically, he asserts the February 15 orders regarding child support, spousal support, attorney fees and costs are void as violating his due process rights.[4]

On June 2, because Rule 5.12.J affects the practice and procedure in family law court, we invited certain interested parties to file amicus curiae briefs. In response, the Appellate Court Committee of the San Diego County Bar Association (Appellate Court Committee) and the San Diego County Certified Family Law Specialists (Family Law Specialists), both committees of the San Diego County Bar Association, have filed such briefs. Speaking solely on its behalf,[5] the Appellate Court Committee urges us to strike down Rule 5.12.J as unconstitutional, both facially and as applied, for depriving

---

[4]Michael also challenges the sufficiency of the evidence supporting the $942 order for monthly child and spousal support entered on April 12. He specifically contests the court's imputing income to Mischelle of only $1,500/month (or $18,000/year) for full-time work as a real estate agent. He notes this is far less than the $32,778 median real estate income for San Diego agents with five years' experience.

"When a trial court's factual determination is attacked on the ground that there is no substantial evidence to sustain it, the power of an appellate court *begins* and *ends* with the determination as to whether, *on the entire record*, there is substantial evidence, contradicted or uncontradicted, which will support the determination, and when two or more inferences can reasonably be deduced from the facts, a reviewing court is without power to substitute its deductions for those of the trial court." (*Bowers v. Bernards* (1984) 150 Cal.App.3d 870, 873-874 [197 Cal.Rptr. 925].) Here, at the April 12 hearing, the record shows the trial court carefully considered the parties' papers and arguments regarding the amount of imputed income to Mischelle. The court's determination is amply supported by her most recent three income and expense declarations and her counsel's acknowledgment she could make $20,000 full time, less child care expenses.

On appeal, Michael refers to evidence that came to light *after* the April 12 hearing showing Mischelle's income was more than represented in 1998 and 1999. If so, he should seek modification accordingly at the trial court.

[5]The San Diego County Bar Association has elected to remain neutral in this matter.

litigants of their procedural and substantive due process right to a meaningful hearing and to hold void the February 15 order. Conversely, the Family Law Specialists assert Rule 5.12.J is valid and does not deny due process. They suggest it resolves a significant tension between the litigants' need to have a timely resolution of their contested matters, the family law court's caseload and available time to hear matters, and the family law court's effective allocation of its time to cases and issues that are actually proceeding to hearing. We appreciate the generous assistance of both amici curiae in this matter.

## THE ENACTMENT AND UNDERLYING PURPOSE OF RULE 5.12.J

Current Rule 5.12.J and its predecessors were enacted by the San Diego County Superior Court pursuant to Government Code section 68070, subdivision (a), which permits it to make rules for its own governance not inconsistent with law or Judicial Council rules, and in strict adherence with Code of Civil Procedure section 575.1 and California Rules of Court, rule 981, by publishing the proposal and inviting local bar comment. Historically, San Diego family law practitioners have been substantially involved in developing and promulgating local rules pertaining to their discipline.[6] Rule 5.12.J is no exception, as in 1995 its predecessor was amended on the recommendation of the local bar to provide opposing counsel with an opportunity to object to the pre-read request.

Given the staggering number of cases that judges assigned to domestic relations law and motion calendars in busy metropolitan courts must hear and decide, superior courts have been compelled to adopt processes designed to expedite hearings on motions and OSC's and to conserve finite judicial resources, while endeavoring to preserve the right to a full and fair hearing for the parties. (See *In re Marriage of Stevenot* (1984) 154 Cal.App.3d 1051, 1059, fn. 3 [202 Cal.Rptr. 116]; *County of Alameda v. Moore* (1995) 33 Cal.App.4th 1422, 1427, fn. 5 [40 Cal.Rptr.2d 18]; Hogoboom & King, Cal. Practice Guide: Family Law (The Rutter Group 1998) ¶ 5:425, p. 5-135 (rev. #1 2000).) However, whether the court-imposed process is the use of declarations and affidavits instead of live testimony (*Reifler v. Superior Court* (1974) 39 Cal.App.3d 479, 485 [114 Cal.Rptr. 356]), the requirement to "meet and confer" (see Super. Ct. S.F. County, Local Rules, rule 11.11; Super. Ct. San Diego County Local Rules, rule 5.12.D), advance notification of settlement or continuance (Super. Ct. L.A. County, Local Rules, rule 14.6 (7) & (9); Super. Ct. Santa Clara County, Local Rules, rule 3.1, § 5.9.7;

---

[6]Similarly, we note the Appellate Court Committee has been actively involved since 1983 in the drafting and amendment process of our local rules and internal operating practices and procedures.

Super. Ct. Ventura County, Local Rules, rule 9.12.E.1 & J.), mandatory confirmation of a scheduled proceeding 48 hours in advance (Super. Ct. Santa Barbara County, Local Rules, rule 1411 (b)), or imposing time limitations on oral argument (Super. Ct. San Diego County, Local Rules, rule 5.12.B; Super. Ct. S.F. County, Local Rules, rule 11.6.C; Super. Ct. Orange County, Local Rules, rule 706.I), a measure implemented for the sake of efficiency cannot jeopardize the constitutional integrity of the judicial process (*Jovine v. FHP, Inc.* (1998) 64 Cal.App.4th 1506, 1532 [76 Cal.Rptr.2d 322]). In other words, court congestion and "the press of business" will not justify depriving parties of fundamental rights and a full and fair opportunity to present all competent and material evidence relevant to the matter to be adjudicated. (*County of Alameda v. Moore, supra,* at p. 1427; *Shippey v. Shippey* (1943) 58 Cal.App.2d 174, 177 [136 P.2d 86]; see *In re James Q.* (2000) 81 Cal.App.4th 255, 258, 265-266 [96 Cal.Rptr.2d 595].)

Confronted by the same dilemma, on January 1, 1992, the San Diego County Superior Court enacted former rule 1.5 (j), which provided: "In the event counsel desires a file to be read in advance of the hearing, the calendar department (557-2020) must be notified no later than noon on the preceding day. Normally the court cannot take a recess to review the file in detail on the day the hearing." On April 1, 1995, former rule 1.5 (j) was renumbered former rule 1.6 (k), retitled "Reading Of File," and amended to read: "In the event counsel desires a file to be read in advance of the hearing, the Downtown calendar department (557-2020) or the Vista Domestic Calendar Department (940-4537) must be notified no later than noon on the preceding day. Opposing counsel must also be given notice of the request. If the court perceives that the request involves review of untimely filed or objectionable declarations, or if opposing counsel objects, the court has discretion to decline the request. Normally the court cannot take a recess to review the file in detail on the day of the hearing." Effective January 1, 1998, former rule 1.6 (k) was moved to Division V of the Coordinated Rules of the Superior and Municipal Courts, San Diego County. Finally, on July 1, 1998, the rule was renumbered rule 5.12 (j), retitled "Pre-Reading Of File By The Court," and amended to provide: "Normally the court cannot take a recess to review the court file in detail on the day of the hearing. If counsel wants the court to read a file before the hearing then counsel shall notify opposing counsel of the request. Counsel shall also notify the calendar clerk of the department in which the matter is calendared no later than noon on the day before the hearing. The pre-read request shall include a designation of all relevant documents filed by both sides. Where counsel requests the court read more than eight documents, counsel shall make arrangements with the calendar clerk for counsel to place yellow tags on the documents to be read. If opposing counsel objects to the request for the pre-read, opposing counsel

shall notify the calendar clerk for the department of the specific objection. This will not, however, prevent the pre-read."[7]

According to the superior court, the underlying purpose of Rule 5.12.J "is to streamline the issues so that each and every litigant on a heavy motion calendar can have his or her day in court. Family law orders to show cause hearings often go off calendar up to and including the time of the hearing. Requiring counsel or the litigants in *pro per* [*sic*] to notify the court in advance of the hearing as to those documents necessary to make a ruling on the matter assures that judicial resources are not being devoted to matters which will go off calendar. Judicial time is then more appropriately devoted to those matters requiring a full and fair hearing. The rule was never intended to preclude a reading of pertinent papers necessary to make a ruling in a given matter."[8]

Preliminarily, before assessing the constitutional validity of Rule 5.12.J, we must determine what it provides and its substantive import. Michael suggests that although when a party timely files papers with the court that party is implicitly requesting it to read and consider them before decision, the family law courts ignore this plea under Rule 5.12.J and refuse to read them in connection with an OSC or noticed motion unless counsel makes a specific pre-read request and complies with five allegedly burdensome procedural requirements set forth in and out of the Rule.[9] Similarly, the arguments of amicus curiae Appellate Court Committee appear to rest on the presumption that Rule 5.12.J purports to excuse the court from reading timely filed papers absent compliance with its provisions. However, the plain language of the Rule does not purport to excuse a court from reviewing the evidence before deciding a contested matter. Rather, it directs the court's attention to relevant filed documents and the issues remaining to be decided in those matters where the relevant record is not reasonably reviewable during the time allotted for the scheduled hearing. In other words, as a

---

[7] On January 1, 2000, rule 5.12 (j) was redesignated Rule 5.12.J.

[8] We note that during the 1998-1999 fiscal year, there were 155,920 family law filings statewide, comprising approximately 10 percent of the civil filings statewide (1,594,807). In San Diego County, family law filings accounted for a slightly higher percentage, 12 percent, numbering 14,969 out of 126,920 civil filings. (Judicial Council of Cal., Ann. Court Statistics Rep., p. 46.1 <http://www.courtinfo.ca.gov/reference/1_annualreports.htm> [as of Sept. 29, 1999].)

[9] Those requirements include (1) notifying opposing counsel of the pre-read request; (2) notifying the department calendar clerk no later than noon on the day before the hearing; (3) designating all relevant documents filed by both sides; (4) where counsel requests the court to read more than eight documents, making arrangements with the calendar clerk for counsel to place yellow tags on the documents to be read; and (5) although not set forth in the Rule, filing of a special San Diego Superior Court Form SUPCT D-117, "Pre-Read Request for Hearing," on bright yellow paper certifying the matter is appropriate for a pre-read.

matter of facial interpretation, a fair reading of Rule 5.12.J is that it is a pre-read, not a no read, rule.

It is firmly established that courts have fundamental inherent equity, supervisory, and administrative powers, as well as inherent power to control litigation before them. That is, family law courts have the authority to exercise reasonable control over all proceedings connected with pending litigation, including formulating rules of procedure where justice requires it, in order to insure the orderly administration of justice. However, family law courts have no authority to promulgate local rules that conflict with any statute or Judicial Council rule or are inconsistent with law. (*Rutherford v. Owens-Illinois, Inc.* (1997) 16 Cal.4th 953, 967 [67 Cal.Rptr.2d 16, 941 P.2d 1203]; 2 Witkin, Cal. Procedure (4th ed. 1996) Courts, § 204, pp. 272-273.)

We interpret court rules in accordance with the cardinal rules of statutory construction, liberally construing them to facilitate the court's mandate to do justice between the parties. (16 Cal.Jur.3d (1983) Courts, §§ 154, 166, pp. 566, 584.) Rule 1.3 expressly provides the "rules shall be construed to secure the efficient administration of the business of the court and to promote and facilitate the administration of justice by the court." Court rules are construed to avoid their invalidity. (2 Witkin, Cal. Procedure, *supra*, Courts, § 205, pp. 273-274.) We accord a challenged rule a reasonable and commonsense interpretation consistent with its apparent purpose, practical rather than technical in nature, which upon application will result in wise policy rather than mischief or absurdity. If possible, we attribute significance to every word, phrase, sentence and part of a rule in pursuit of its underlying purpose, as its various parts must be harmonized by considering them in the context of the rule framework as a whole. Finally, we take into account matters such as context, the object in view, the evil to be remedied, the history of the times, public policy, and contemporaneous interpretation. (See *DeYoung v. City of San Diego* (1983) 147 Cal.App.3d 11, 18 [194 Cal.Rptr. 722], disapproved on another ground in *Yamaha Corp. of America v. State Bd. of Equalization* (1998) 19 Cal.4th 1, 15 [78 Cal.Rptr.2d 1, 960 P.2d 1031]; *United Business Com. v. City of San Diego* (1979) 91 Cal.App.3d 156, 170 [154 Cal.Rptr. 263].)

By its express title, Rule 5.12.J applies solely to the court's *pre-reading* of a file. Its prefatory sentence sets forth its procedural context, explaining that normally the court cannot take a recess to review the court file in detail on the day of the hearing. Accordingly, it directs counsel on how to make a pre-read request, including required notifications, timeliness and the designation of all relevant documents. It further provides that where counsel requests the court to read more than eight documents, counsel shall make

arrangements with the calendar clerk for counsel to tag the documents to be read. Finally, the Rule sets forth the notice requirements imposed upon opposing counsel who object to the request. Thus, Rule 5.12.J neither expressly nor impliedly excuses a court from reviewing the evidence before deciding a matter. Rather, a fair reading of the Rule implies that where counsel elect not to make a pre-read request, the filings and documents relevant to the calendared matter are not so voluminous or complex that the family law court cannot review them during the hearing before decision. Indeed, this interpretation is compelled by rule 5.12.B,[10] which expressly provides that 20-minute and long cause calendars, and impliedly 40-minute calendars, anticipate court times that include presentation of the hearing and reading of the file by the court. In other words, rule 5.12.B clearly and unmistakably sets out the court's practice of reviewing pertinent documents during the hearing on a contested matter before decision absent a pre-read request. In fact, the reporter's transcript of the February 15 hearing clearly shows the court was endeavoring to do so during the parties' argument. To construe Rule 5.12.J otherwise would ignore its clear language and the reasonable and commonsense interpretation above, compromise the integrity of the judicial process and render meaningless the judicial mandate to do justice between the parties based upon the evidentiary proffer in the particular cause.

By design, Rule 5.12.J relies on counsel's or an in propria persona litigant's familiarity with the specific matter and opinion whether it requires additional judicial review before hearing and adjudication in light of the court's express practice of reviewing pertinent documents during the hearing on a contested matter. It thus conserves out-of-court judicial time by not expending it on matters which counsel and the parties believe do not require it. The enactment functionally directs the family law court's attention to those time-consuming, more substantive matters that the parties believe require preparatory review before hearing. It alerts the court to complex matters, the issues to be decided, and the documents that should be read

---

[10]Rule 5.12.B, entitled "Morning and Afternoon Calendars," provides in part: "At the Central Division, noticed motions and order to show cause matters are heard Monday, Tuesday and Wednesday mornings and Monday and Tuesday afternoons. The morning calendar is limited to matters which take no more than 20 minutes of court time, including presentation of the hearing and reading of the file by the court. All contempts, longer OSC's and noticed motions (those with time estimates of more than 20 minutes but less than 40 minutes) shall be set on the afternoon calendar. When counsel is aware that a matter will take more than 20 minutes but less than 40 minutes, counsel shall request an afternoon setting at the time the OSC or motion is filed. This request shall be noted by the counsel in the upper right-hand corner of the OSC or Notice of Motion form (SUPCT D-8 or D-53). Matters which require more than 40 minutes, including presentation of the hearing and reading of the file by the court, shall be specially set by the court either through ex parte application or at the time of the initially noticed hearing."

before taking any judicial action. Family court files over the years grow into several volumes with relevant pleadings contained in each. A family law case is not necessarily concluded upon entry of judgment, as later modifications in both support and custody may occur for years. The designation and premarking process of Rule 5.12.J advises the court as to which documents it should read and by exclusion those irrelevant papers that it need not waste its limited time reviewing. Moreover, in cases involving numerous issues, several of which may have settled by the time of the hearing, predesignation and pre-reading focus the court's attention on the matters remaining at issue for that hearing, as well as the relevant documentary material necessary for deciding them. Indeed, belated but timely pre-read requests more often than not confirm the likelihood the matter will be heard as scheduled.

According to amicus curiae Family Law Specialists, Rule 5.12.J in context and practice effectively conserves and economizes finite judicial court time by permitting more cases to be heard in a shorter time and the allocation of more judicial time to those matters that are proceeding to hearing. They explain San Diego County has 20-minute morning calendars three days per week and 40-minute afternoon calendars two days per week. These calendar time frames anticipate argument from counsel or in propria persona litigants, the court's review of the pertinent file declarations and the time for the court to make its order and to explain it if needed. If the matter exceeds 40 minutes, a special set is required as a long cause OSC. (Rule 5.12.B.) These calendars are set within a weekly context of strictly allocated judicial time. The balance of the court's time is occupied with case management conferences on Wednesday afternoon; long cause trial days on Thursday afternoons, with supervised settlement conferences if a judicial officer is available; and short cause trials and long cause OSC's exceeding 40 minutes on Fridays. Preceding a typical morning 20-minute calendar, the family law court hears and decides multiple ex parte matters. As to the 20-minute calendar, approximately one-third of the matters will have settled (more often than not on the day of the hearing) and one-third of them will be continued, leaving the remainder for the court to hear and decide.[11] Although the remaining contested matters to be decided vary as to difficulty and complexity, they easily exhaust the entire morning, and often part of the afternoon, session.

Experience has proved that 20-minute calendars can easily accommodate review and resolution of many contested matters, such as standard financial

[11]Amicus curiae Family Law Specialists note that statistics obtained from the San Diego County Superior Court reveal that a significant number of cases are not judicially decided on the date originally set. In fact, during the 1999-2000 fiscal year, there were 22,785 motions set in the downtown central district, of which 3,493 were canceled and 9,971 were continued.

issues that simply require the court to apply computer programs approved by the Judicial Council to calculate support (Fam. Code, § 3830) in a manner consistent with the law, and to review the income and expense declarations and accompanying documents while counsel argue the case. To facilitate quick review, all major substantive declarations and pleadings are color-coded. When necessary, the court makes pertinent inquiry of counsel concerning areas that are at issue. Pre-read requests are more often made on the 40-minute OSC calendar. These cases invariably involve multiple and/or complex issues that cannot be accommodated in the 20-minute morning calendar. Such matters are set on the afternoon calendar or due to complexity on the long cause Friday calendar. In fact, the afternoon calendar contains many matters that normally would be placed on the long cause Friday calendar, as the pre-read rule permits these longer matters to be placed on the 40-minute calendar thus saving the litigants time and money and economizing in-court hearing time.

## RULE 5.12.J IS FACIALLY CONSTITUTIONAL

 Michael, joined by amicus curiae Appellate Court Committee, contends Rule 5.12.J is facially unconstitutional as violating the due process rights of family court litigants as guaranteed under the Fourteenth Amendment of the United States Constitution and article I, sections 7, subdivision (a) and 15 of the California Constitution. They assert the Rule violates the procedural due process guarantee of a meaningful hearing by permitting family law courts to decide contested matters based solely on argument without considering timely proffered evidence in the record. As we shall explain, we conclude as articulated above that their contention rests on an erroneous premise the Rule facially authorizes such a process—it does not. Consequently, considering the allegedly threatened private interest of a meaningful hearing, the court's interest underlying the enactment of the Rule and the remote (if not nonexistent) risk posed by its application compels the conclusion Rule 5.12.J is consistent with due process.

 Generally, a law or other enactment may not be held unconstitutional on its face simply because those challenging the provision may be able to hypothesize some instances in which its application might be unconstitutional. Similarly, an enactment will not be upheld by ignoring the actual standards contained within the procedural scheme simply because in some hypothetical situation it might lead to a permissible result. Rather, it must be demonstrated that the enactment's provisions inevitably pose a present total and fatal conflict with applicable constitutional prohibitions. (*California Teachers Assn. v. State of California* (1999) 20 Cal.4th 327, 338 [84 Cal.Rptr.2d 425, 975 P.2d 622]; *American Academy of Pediatrics v. Lungren*

(1997) 16 Cal.4th 307, 347 [66 Cal.Rptr.2d 210, 940 P.2d 797]; *Tobe v. City of Santa Ana* (1995) 9 Cal.4th 1069, 1084 [40 Cal.Rptr.2d 402, 892 P.2d 1145].)

■ "The guarantee of procedural due process—a meaningful opportunity to be heard—is an aspect of the constitutional right of access to the courts for all persons, without regard to the type of relief sought." (*California Teachers Assn. v. State of California, supra,* 20 Cal.4th at pp. 338-339.) ■ The facial validity of the challenged rule depends upon a balancing of the competing interests at stake. "These include the private interest affected by the official action, the government's interest, and the risk of an erroneous deprivation of the private interest, including the probable value, if any, of additional or substitute procedural safeguards and the burdens such safeguards would entail." (*Id.* at p. 347; *Mathews v. Eldridge* (1976) 424 U.S. 319, 334-335 [96 S.Ct. 893, 902-903, 47 L.Ed.2d 18].) This balancing analysis requires an examination of procedures to ascertain whether they assure a minimum overall standard of fairness in the particular context, as procedural due process rules are indeed shaped by the risk of error inherent in the generality of cases, not the rare exceptions. (*California Teachers Assn. v. State of California, supra,* at p. 347; *Mathews v. Eldridge, supra,* at p. 344 [96 S.Ct. at p. 907].) Accordingly, when an enactment broadly and directly impinges upon the fundamental constitutional rights of a substantial portion of those individuals to whom it applies, it can be upheld only if, considering its general and normal application, its compelling justifications outweigh its impingement upon constitutional rights and cannot be accomplished by less intrusive means. (*American Academy of Pediatrics v. Lungren, supra,* 16 Cal.4th at p. 348.)

As to the private interest at stake, the parties are in dispute. Relying on *County of Yuba v. Savedra* (2000) 78 Cal.App.4th 1311, 1325 [93 Cal.Rptr.2d 524], Mischelle contends the private interest at stake, child and spousal support payments, is purely financial in nature, rendering it not fundamental in a constitutional sense. In other words, Michael's private financial interest in avoiding a certain monetary amount of child and spousal support is accorded less deference than fundamental property rights, such as free speech, religious freedom or liberty. Michael and amicus curiae Appellate Court Committee disagree, asserting the private interests at stake are in fact fundamental. Michael argues that given Mischelle's counsel threatened him with contempt if he did not immediately comply with the $1,235 monthly support order of February 15 retroactive to December 1, 1999, the support award implicated a fundamental liberty interest to be free from confinement. Moreover, he notes Rule 5.12.J applies to all noticed motions and OSC's, including those involving custody and visitation rights. In this

context, amicus curiae Appellate Court Committee cites as the private interest at stake the right to be heard in a meaningful manner. That is, it asserts the parties are entitled to a hearing at which the family court considers the evidence before ruling. In other words, due process is violated when the court refuses to consider timely filed papers and proffered evidence before deciding a matter, instead relying solely upon the arguments of counsel. Moreover, they assert the litigants' interest in a meaningful hearing is particularly acute in family law matters, as the right to marry and divorce constitutes a fundamental right (*Perez v. Sharp* (1948) 32 Cal.2d 711, 714-715 [198 P.2d 17]); marital status can only be altered through judicial proceedings (*Boddie v. Connecticut* (1971) 401 U.S. 371, 380-381, fn. 8 [91 S.Ct. 780, 787-788, 28 L.Ed.2d 113]; *Sapp v. Superior Court* (1953) 119 Cal.App.2d 645, 650 [260 P.2d 119]); and, given that family courts routinely decide child custody and visitation issues, parents have a fundamental liberty interest in the care, custody, and management of their children (*Santosky v. Kramer* (1982) 455 U.S. 745, 753 [102 S.Ct. 1388, 1394-1395, 71 L.Ed.2d 599]). We agree that within this context of the scope of the familial rights involved and the entitlement to a meaningful hearing, the litigants' interests are clearly more substantial than the mere loss of money at stake. (See *California Teachers Assn. v. State of California, supra,* 20 Cal.4th at p. 348.)

The countervailing interest of the state is significant. As expressly articulated by the Superior Court, its interest underlying Rule 5.12.J is to conserve and economically allocate finite judicial resources by avoiding their devotion to matters that go off calendar while focusing them on matters that due to their nature require more judicial time to review the record than is afforded during the scheduled hearing. Mindful Rule 5.12.J is a pre-read and not a no-read rule, it is not designed to *reduce* the court's workload, but rather to allocate efficiently the court's limited resources so as to *meet* that demand. That is, to provide a meaningful hearing and an opportunity to be heard to all litigants who come before it. Given the procedural setting that many family law matters are removed from calendar before hearing due to negotiations, stipulations and/or continuances, the Rule is tailored to avoid the potential, if not inevitable, waste of precious judicial resources expended reading every file before hearing when there is a significant likelihood either the hearing will not go forward or the issues contested will not be as represented. The Rule by design and practice conserves finite judicial time, while directing the family law court's attention to the issues that remain to be decided, their complexity, and the documents that should be reviewed before deciding them where the relevant record cannot be reasonably reviewed during the scheduled hearing. By doing so, it effectively conserves and economizes finite judicial court time by permitting more cases to be

heard in a shorter time and the economical allocation of more judicial time to those matters that require it. Consequently, properly followed and applied, Rule 5.12.J preserves the constitutional integrity of the judicial process.

The risk of an erroneous deprivation of a family law litigant's fundamental rights to a meaningful hearing on an OSC and a derivative order based upon the evidentiary record and reasoned judgment under Rule 5.12.J is unlikely and, if it is properly applied, nonexistent. Preliminarily, the Rule is simply a guideline to which the court will usually adhere, as it retains the discretion to pre-read a file without request. (Rule 1.1; see *Reifler v. Superior Court, supra,* 39 Cal.App.3d at p. 485.) Second, as explained above, the Rule is a pre-read not a no-read rule, and the court is vested with discretion to receive additional oral evidence and where necessary to take a matter off calendar and continue it or take it under submission. Third, it applies to all parties—those represented by counsel and those who are not. (Rule 1.1.) Out-of-town counsel are placed in no different position than local counsel or in propria persona litigants, in that they are expected to have read and familiarized themselves with local rules which are designed to alert all parties to the procedural devices used by the particular court to manage its calendar. Fourth, the Rule is neither onerous nor cumbersome, and does not place "burdensome hoops" upon any party seeking a meaningful opportunity to be heard before the court. Amicus curiae Family Law Specialists, after considering the inconvenience of the challenged process and specifically tagging pleadings in complex matters of more than eight documents against the "system wide benefit," does not find the Rule burdensome, explaining the vast majority of pre-read requests are handled telephonically with the clerk. They and Mischelle persuasively note the procedural requirements in Rule 5.12.J are no more burdensome than those in place for summary judgment motions (Cal. Rules of Court, rule 342 et seq.) or requests for judicial notice (Cal. Rules of Court, rule 323(b)).[12]

Finally, there is no need for any additional procedural safeguards. Michael and amicus curiae Appellate Court Committee suggest other ways to address the superior court's concern regarding the conservation and efficient allocation of judicial resources such as requiring advance confirmation of scheduled hearings (Super. Ct. Santa Barbara County, Local Rules, rule 1411 (b)) or notification of settlement or continuance, and imposition of sanctions for failure to comply (see Super. Ct. L.A. County, Local Rules, rule 14.6 (7) &

---

[12]California Rules of Court, rule 323(b) provides: "A party requesting judicial notice of material under Evidence Code sections 452 or 453 shall provide the court and each party with a copy of the material. If the material is part of a file in the court in which the matter is being heard, the party shall (1) specify in writing the part of the court file sought to be judicially noticed; and (2) make arrangements with the clerk to have the file in the courtroom at the time of the hearing."

(9); Super. Ct. Santa Clara County, Local Rules, rule 3.1, § 5.9.7; Super. Ct. Ventura County, Local Rules, rule 9.12.E.1 & J.), or appointing more judges to the family law court. However, such measures are neither necessary nor justified given the apparent efficacy of Rule 5.12.J, the court's discretion to pre-read the file without a request and the minimal burden on counsel or in propria persona litigants to request a pre-read. Moreover, the Rule neither authorizes nor condones adjudication without prior review of the relevant procedural and evidentiary record.[13]

## RULE 5.12.J WAS UNCONSTITUTIONALLY APPLIED AT THE FEBRUARY 15 HEARING

Although an enactment is held to be facially constitutional, it may have nevertheless been unconstitutionally applied as to a specific individual under particular circumstances, depriving that person of a protected right, such as a meaningful opportunity to be heard. (*Boddie v. Connecticut, supra,* 401 U.S. at pp. 379-380 [91 S.Ct. at pp. 786-787].) ▮ Michael and amicus curiae Appellate Court Committee thus contend the Rule as applied to Michael violated his constitutional right to procedural due process. They assert his interest in having his matter decided on the merits clearly out-weighed the court's interest in reducing its workload by not reviewing the evidence the parties submitted on disputed factual issues. We conclude the family law court erred under the circumstances by not reviewing the record before making its February 15 order, as it could have put the matter over until it had additional time to review the file or taken the case under submission. Accordingly, within this context, the court misapplied Rule 5.12.J denying Michael procedural due process at the February 15 hearing.

▮ Unlike a facial challenge to the constitutional validity of a rule that considers only the text of the measure itself, an applied challenge looks to the particular circumstances of its application to a specific individual. "An as applied challenge may seek (1) relief from a specific application of a facially valid statute or ordinance to an individual or class of individuals who are under allegedly impermissible present restraint or disability as a result of the manner or circumstances in which the statute or ordinance has been applied,

---

[13]Granted, the Fifth and Fourteenth Amendments' guarantee of due process of law includes a substantive component that forbids the government from infringing upon certain fundamental liberty interests at all, regardless what process is provided, unless the infringement is narrowly tailored to advance a compelling state interest. (*Reno v. Flores* (1993) 507 U.S. 292, 301-302 [113 S.Ct. 1439, 1446-1447, 123 L.Ed.2d 1]; *Washington v. Glucksberg* (1997) 521 U.S. 702, 719-721 [117 S.Ct. 2258, 2267-2268, 138 L.Ed.2d 772].) However, because we conclude the Rule does not abridge fundamental rights of litigants in San Diego family law court as to meaningful hearings and judicial determinations within the context of any associated liberty interest, it does not violate substantive due process. *This contention is simply the procedural due process argument recast in substantive due process terms.*

or (2) an injunction against future application of the statute or ordinance in the allegedly impermissible manner it is shown to have been applied in the past. It contemplates analysis of the facts of a particular case or cases to determine the circumstances in which the statute or ordinance has been applied and to consider whether in those particular circumstances the application deprived the individual to whom it was applied of a protected right." (*Tobe v. City of Santa Ana, supra,* 9 Cal.4th at p. 1084.) To find an enactment violates the right to procedural due process in a particular case, the court must evaluate the factors cited above. (*Little v. Streater* (1981) 452 U.S. 1, 6, 16-17 [101 S.Ct. 2202, 2205-2206, 2210-2211, 68 L.Ed.2d 627].) In doing so, we essentially balance the private interest compromised by the enactment against the state's interest. (*Estate of Cornelious* (1984) 35 Cal.3d 461, 466-467 [198 Cal.Rptr. 543, 674 P.2d 245]; *In re Lisa R.* (1975) 13 Cal.3d 636, 648-651 [119 Cal.Rptr. 475, 532 P.2d 123, 90 A.L.R.3d 1017].)

Simply stated, Michael's private interest in having a meaningful hearing and all that that right encompasses outweighs any state interest in conserving and allocating finite judicial resources in an efficient and expedient manner. (See *County of Alameda v. Moore, supra,* 33 Cal.App.4th at p. 1427.) On February 15, Michael was entitled to procedural due process, that is, the right to be heard in a meaningful manner and to an adjudication following consideration of all relevant, proffered, competent evidence. (See *In re Marriage of Kern* (1978) 87 Cal.App.3d 402, 411 [150 Cal.Rptr. 860]; *People v. Mizer* (1961) 195 Cal.App.2d 261, 268-269 [15 Cal.Rptr. 272]; *Estate of Buchman* (1954) 123 Cal.App.2d 546, 560 [267 P.2d 73, 47 A.L.R.2d 291]; *Shippey v. Shippey, supra,* 58 Cal.App.2d at p. 177.) The family law court denied him this right by misapplying Rule 5.12.J, electing to rule without first completely reviewing the relevant evidentiary record. Indeed, as the court candidly stated, an order, although temporary in nature, that is simply a guesstimate does not do justice.

## MICHAEL HAS NOT SUFFERED SUFFICIENT PREJUDICE TO WARRANT THE GRANTING OF HIS PETITION

As illustrated above, the problem with this case is that the family law court misapplied Rule 5.12.J after counsel misadvised it regarding the true time necessary to hear and decide the cause, compounded by the fact that Michael's counsel was unaware of the Rule and local practice. The family law court should have realized it had discretion under the Rule to simply put the matter over until it had additional time to review the file or take the matter under submission. In failing to do so and ruling without fully reading the evidentiary record, the family law court erred. However, as we shall explain, any prejudice suffered by Michael as a result of the temporary February 15 order was eliminated by the April 12 hearing and resulting order.

Preliminarily, we note that had Michael's counsel been aware of Rule 5.12.J and made a request pursuant to it for a pre-read, this controversy in all probability would never have arisen. Professionally, counsel had a duty to her client to become fully acquainted with the superior court's local rules. However, the February 15 support order was not a final order and the family law court expressly entered the order without prejudice, encouraging the parties to come back in 30 days after further discovery so that it could give the support determination further consideration. Further, Michael was afforded a full and fair hearing on April 12, held after both parties had requested a pre-read pursuant to Rule 5.12.J. Indeed, we reiterate the family law court suggested holding the second hearing, because it believed the prior hearing was brought on the wrong calendar rendering it impossible for him to adequately review the record so as to "do justice." Before the April 12 hearing, the court spent approximately three hours reviewing the file. The parties had ample opportunity to proffer additional evidence and did so, as the court's error in failing to review the evidentiary record before making the temporary order was cured at the later hearing.

Michael seeks an order declaring the February 15 order null and void; however, he fails to demonstrate how a different result would occur if we obliged. This is understandable given that he has subsequently presented additional evidence; the court spent approximately three hours pre-reading the file; a full hearing consistent with due process was held; and he obtained a reduction in the support order retroactive to December 1, 1999, with credit for all overpayments previously made. Moreover, the April 12 order itself was not a final order, as Michael is free to again seek modification of it. Finally, the only potential prejudice suffered by Michael is the attorney fees incurred for two hearings rather than one. If he in fact incurred any additional fees, he did so in part because of his counsel's failure to familiarize herself with the local rules and to request a pre-read. Consequently, there is no reason to set aside an order that has been vacated by a later hearing and order.

### DISPOSITION

The petition is denied. Each party to bear its own costs.

Kremer, P. J., and Haller, J., concurred.

Petitions for a rehearing were denied October 17, 2000, and the opinion was modified to read as printed above.