[Civ. No. 47995. First Dist., Div. One. June 26, 1980.]

POPELKA, ALLARD, McCOWAN & JONES, Petitioner, v.
THE SUPERIOR COURT OF SANTA CLARA COUNTY,
Respondent;
H. COSTER ENTERPRISES et al., Real Parties in Interest.

COUNSEL

Ronald E. Mallen, John B. Hook, Robert C. Gordon III, Gail J. Saliterman, and Long & Levit for Petitioner.

No appearance for Respondent.

Stephen Gazzera, Jr., Barry M. Klein and Gazzera & Antonioli for Real Parties in Interest.

OPINION

NEWSOM, J.—Petitioner, the law firm of Popelka, Allard, McCowan & Jones, seeks a writ of mandate to compel respondent court to deny real parties' motion to compel answers at a deposition.

Petitioner (law firm) is one of two defendants in an action for malicious prosecution brought by real parties (plaintiffs) H. Coster Enterprises, Dutch Boy, Inc. and John J. Harvey. The complaint alleges that the law firm and its former client, James Petrinovich, acted without probable cause and with malice in bringing a prior action against plaintiffs.

Plaintiffs deposed Bernard Allard, one of the law firm's partners, on February 12, 1979. During the deposition Allard refused to answer questions about the firm's interoffice memos concerning the prior case, asserting the attorney work product privilege.

Plaintiffs moved to compel answers on May 24, 1979, contending that the law firm had waived the work product privilege by pleading the affirmative defense of probable cause in its answer to the complaint; that the work product privilege was inapplicable because the underlying action had terminated; that plaintiffs would be unfairly prejudiced by

application of the privilege; and that the privilege did not apply. The law firm opposed the motion, arguing that the memos in question were absolutely privileged under statute. Judge Allen denied the motion to compel on June 20, 1979.

Plaintiffs sought reconsideration, asserting that their attorney had missed the hearing because of traffic. The law firm opposed, arguing that the motion had been fully briefed and heard. Judge Allen granted reconsideration on July 10, 1979. On that date he reversed his prior order and granted plaintiffs' motion to compel, reasoning that "the Popelka firm has waived any privilege of its own by its answer raising the affirmative defense of probable cause."

The law firm moved for reconsideration on July 23, 1979, arguing that it had not expected plaintiffs' motion for reconsideration to be heard on the merits. Plaintiffs opposed. Judge Allen heard the motion and reaffirmed his prior order on August 16, 1979, again basing his decision on waiver.

The law firm filed the instant petition for mandate in this court on October 16, 1979. It was denied as untimely because it was filed well over 60 days beyond the July 10 order granting plaintiffs' motion, and over 60 days after the second order of August 16. The law firm sought hearing in the California Supreme Court. That court granted a hearing on January 8, 1980, and transferred the matter to us with directions to issue an alternative writ.

The initial petition to this court was denied because it had been filed over 60 days after the trial court's order. ██ An appellate court *may* consider a petition for an extraordinary writ at any time (*Bryant* v. *Superior Court* (1936) 16 Cal.App.2d 556, 561 [61 P.2d 483]), but has discretion to deny a petition filed after the 60-day period applicable to appeals, and *should* do so absent "extraordinary circumstances" justifying the delay. (*Reynolds* v. *Superior Court* (1883) 64 Cal. 372, 373 [28 P. 121]; *People* v. *Municipal Court (Mercer)* (1979) 99 Cal.App.3d 749 [160 Cal.Rptr. 455]; *People* v. *Superior Court (Duran)* (1978) 84 Cal.App.3d 480, 489 [148 Cal.Rptr. 698]; *Scott* v. *Municipal Court* (1974) 40 Cal.App.3d 995, 996 [115 Cal.Rptr. 620]; *Estate of Glassgold* (1950) 97 Cal.App.2d 859, 863-864 [218 P.2d 1016].) A denial on the basis of untimeliness is appropriate even though the opposing party would not be prejudiced by consideration of the petition on the merits. (*Scott* v. *Municipal Court, supra,* 40 Cal.App.3d at p. 997.)

Although the Supreme Court granted hearing in this case, and ordered the alternative writ returned before this court, such a grant of hearing does not *ipso jure* establish that a petitioner is entitled to the relief sought. (*Charlton v. Superior Court* (1979) 93 Cal.App.3d 858, 861 [156 Cal.Rptr. 107].) And while grant of hearing followed by transfer to an appellate court has been held to establish that the petition is procedurally appropriate (*Atlantic Richfield Co. v. Superior Court* (1975) 51 Cal.App.3d 168, 170 [124 Cal.Rptr. 63]), that holding has been controverted both by the same court (*Krueger v. Superior Court* (1979) 89 Cal.App.3d 934, 939 [152 Cal.Rptr. 870]) and another (*Charlton v. Superior Court, supra,* 93 Cal.App.3d at p. 861). Therefore, we join the *Charlton* court, *supra,* in concluding that the Supreme Court's action means only that this court must decide the issues presented. (*Charlton v. Superior Court, supra,* at p. 861.)

In *Krueger,* the court denied the petition without ruling on the substantive questions, despite the Supreme Court's grant of hearing and transfer, because the petition was untimely and unverified and the record was insufficient. (89 Cal.App.3d at pp. 939-940.) Here, the facial defects in the petition are its untimeliness and the absence of transcripts of hearings before Judge Allen. (Cf. *Lemelle v. Superior Court* (1978) 77 Cal.App.3d 148, 156-157 [143 Cal.Rptr. 450].) Since, however, the petition has been fully briefed we will decide it on the merits, reiterating the importance of timeliness, and a full record.

California has a statutory privilege for an attorney's work product. "The work product of an attorney shall not be discoverable unless the court determines that denial of discovery will unfairly prejudice the party seeking discovery in preparing his claim or defense or will result in an injustice, and any writing that reflects an attorney's impressions, conclusions, opinions, or legal research or theories shall not be discoverable under any circumstances." (Code Civ. Proc., § 2016, subd. (b).) The statute creates a qualified privilege against discovery of general work product and an absolute privilege against discovery of writings containing an attorney's impressions. (*American Mut. Liab. Ins. Co. v. Superior Court* (1974) 38 Cal.App.3d 579, 594 [113 Cal.Rptr. 561].)

■ Here, plaintiffs inquired about the law firm's interoffice memos concerning a previous action. Since these memos are writings reflecting an attorney's "impressions, conclusions, opinions, or legal research or theories," they are absolutely privileged from discovery.

Plaintiffs assert that the privilege could not have been intended to protect attorneys who act without probable cause. The law firm, however, has not been shown to have acted without probable cause, even under the "objective" standard (see fn. 2, *infra*). If filing a malicious prosecution action (or, by the same logic, a malpractice action) could automatically open an attorney's files to a prior action, then an attorney, anticipating such a future suit, would hesitate to commit his or her doubts about a case to paper.

■ Preventing such hesitation on an attorney's part is one of the principal purposes of the privilege, which is designed "...(i) to preserve the rights of attorneys to prepare cases for trial with that degree of privacy necessary to encourage them to prepare their cases thoroughly and to investigate not only the favorable but the unfavorable aspects of such cases ...." (Code Civ. Proc., § 2016, subd. (g).) This purpose is elaborated in *Hickman* v. *Taylor* (1947) 329 U.S. 495, 511 [91 L.Ed. 451, 462, 67 S.Ct. 385], which was influential in framing the federal and California work product privileges. "Proper preparation of a client's case demands that he assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference....Were... [the lawyer's work product] open to opposing counsel on mere demand, much of what is now put down in writing would remain unwritten. An attorney's thoughts, heretofore inviolate, would not be his own. Inefficiency, unfairness and sharp practices would inevitably develop in the giving of legal advice and in the preparation of cases for trial. The effect on the legal profession would be demoralizing. And the interests of the clients and the cause of justice would be poorly served." (*Id.*, at p. 511 [91 L.Ed. at p. 462].)

■ California courts apparently have not considered whether the attorney work product privilege ceases when the action terminates. The federal courts, interpreting a work product rule similar to California's,[1]

---

[1]Federal Rules of Civil Procedure, rule 26(b)(3) (28 U.S.C.) (derived from *Hickman, supra*, 329 U.S. 495) provides in part: "Subject to the provisions of subdivision (b)(4) of this rule, a party may obtain discovery of documents and tangible things otherwise discoverable under subdivision (b)(1) of this rule and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including his attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of his case and that he is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has been made, the court shall protect against dis-

have considered this issue at length. The great weight of federal authority is for continuation of the privilege beyond termination of the action. (*In re Murphy* (8th Cir. 1977) 560 F.2d 326 [action against drug manufacturers for fraudulent activities in which the Justice Department alleged that companies knew patents litigated in prior actions were invalid; attorney work product from prior actions held privileged]; *United States* v. *Leggett & Platt, Inc.* (6th Cir. 1976) 542 F.2d 655, 660; *Duplan Corp.* v. *Moulinage et Retorderie de Chavanoz* (4th Cir. 1973) 487 F.2d 480, 484, and cases cited therein.)

The federal cases just cited have reasoned that the primary purpose of the rule—encouraging full and fair representation of a client and preparation of a case without fear of subsequent scrutiny by opposing parties—was not sufficiently served by a privilege which lived only until termination of the action. (Cf. *In re Murphy, supra*, 560 F.2d at p. 334.) The instant case illustrates the force behind such reasoning and we therefore hold that the privilege extends beyond the termination of the litigation for which the documents were prepared.

Plaintiffs rely on *Handgards, Inc.* v. *Johnson & Johnson* (N.D.Cal. 1976) 413 F.Supp. 926. There, however, defendants in the subsequent case had planned to call as witnesses three lawyers who had prosecuted the prior action. The court held that plaintiff could not effectively cross-examine the witnesses without prior discovery of their work product. *Handgards* thus speaks solely to the issue of waiver, discussed *infra*, rather than to cessation of the privilege when the action terminates.[2]

Plaintiffs contended successfully below that petitioner waived the attorney work product privilege by "tendering" probable cause to sue as an affirmative defense in its answer to plaintiffs' complaint. (They now base their claim of waiver additionally on the law firm's answer to Petrinovich's cross-complaint against it for malpractice. In its answer, the law firm generally denied Petrinovich's allegations and also raised the affirmative defense of comparative indemnity.)

In so contending, plaintiffs rely on the proposition that a party who affirmatively tenders an issue waives its privilege as to evidence relevant to that issue. (Cf. *Wilson* v. *Superior Court* (1976) 63 Cal.App.3d 825

---

closure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation."

[2] We express no opinion as to the correctness of the decision in *Handgards, supra*, 413 F.Supp. 926, noting only that it is inapplicable here.

[134 Cal.Rptr. 130] [plaintiff suing her accountant for negligent tax return preparation waived confidentiality of tax returns by tendering issue of their contents]; *Merritt v. Superior Court* (1970) 9 Cal.App.3d 721. [88 Cal.Rptr. 337] [plaintiff in action for bad faith failure to settle placed state of her counsel's mind in issue by alleging that insurer had "confused" counsel and so precluded settlement].)

In the case at bench, plaintiffs tendered the issue of probable cause by alleging malicious prosecution.[3] The law firm's affirmative defense of probable cause merely denied plaintiffs' allegation of lack of probable cause, on which plaintiffs had the burden of proof, and was thus redundant. (Cf. *Carlton v. Superior Court* (1968) 261 Cal.App.2d 282, 289-290 [67 Cal.Rptr. 568].)[4] The instant case differs from *Handgards, Inc. v. Johnson & Johnson, supra,* 413 F.Supp. 926, in which defendant had planned to call attorneys from the prior action as witnesses "to express their opinions as to the merits of the prior suits and the validity of the underlying patents." (*Id.,* at p. 931.) In *Handgards* the court granted plaintiff discovery so that he could prepare an effective cross-examination. Here, the law firm, rather than producing witnesses, merely waits for plaintiffs to come forward with their own evidence. To hold the privilege waived in such a case would be to hold it waived in every malicious prosecution action, thus defeating the privilege's purpose.

Let a peremptory writ of mandate issue directing respondent court to vacate its order granting respondent's motion to compel answers and to enter a new order denying the motion.

Elkington, Acting P. J., and Grodin, J., concurred.

---

[3]The probable cause standard in a malicious prosecution action is partly objective (a reasonable man's belief that the claim has merit) and partly subjective (defendant's belief that the claim had merit). (See *Bertero v. National General Corp.* (1974) 13 Cal.3d 43, 55; *Tool Research & Engineering Corp. v. Henigson* (1975) 46 Cal.App.3d 675, 683.)

[4]*Carlton v. Superior Court, supra,* 261 Cal.App.2d 282 held that a *defendant* who denies intoxication, when it was affirmatively alleged in the complaint does not thereby tender the issue so as to waive the physician-patient privilege. Although the waiver there was statutory in origin, the court's reasoning is harmonious with the conclusions we reach.