[No. A095728. First Dist., Div. Five. Dec. 18, 2001.]

VOLKSWAGEN OF AMERICA, INC., et al., Petitioners, v.
THE SUPERIOR COURT OF THE CITY AND COUNTY OF SAN
FRANCISCO, Respondent;
WILBUR ADAMS et al., Real Parties in Interest.

**COUNSEL**

Carroll, Burdick & McDonough, Justs N. Karlsons, James G. Scadden, Kathryn A. Amnott, Terrie L. Robinson, David M. Rice and Laurie J. Falik for Petitioners.

No appearance for Respondent.

Brayton, Purcell, Curtis & Geagan, Alan R. Brayton, Gilbert L. Purcell and Lloyd F. LeRoy for Real Parties in Interest.

OPINION

**JONES, P. J.**—In this case, we will hold that General Order No. 55, adopted by the San Francisco Superior Court to help manage its complex asbestos litigation, does not violate California Rules of Court, rule 981.1, which preempts generally applicable local rules.

## I. FACTUAL AND PROCEDURAL BACKGROUND

By the early 1980's, the complexity and volume of asbestos-related litigation in state and federal courts had become the focus of substantial judicial resources and public attention. In response, the National Center for State Courts (NCSC) established a working group to develop and publicize methods to resolve asbestos cases expeditiously. The working group produced a report which noted "[t]he complexity of the asbestos legal environment has resulted in almost total dependence upon the courts to resolve thousands of pending claims." (NCSC, Judicial Administration Working Group on Asbestos Litigation, Final Rep. with Recommendations (1984) pt. II, p. 3 (hereafter NCSC Asbestos Recommendations).) The report observed that the absence of prefiling claims processes and the practice of one claimant suing a large number of defendants resulted in excessive cross-claims and prolonged and duplicative pleading and discovery proceedings. (*Ibid.*) The report predicted that the "burden [on the courts] will grow as thousands of additional claims mature over the next twenty to thirty years, unless other means are developed to resolve such cases." (*Ibid.*)

Responding to this shared concern, the San Francisco Superior Court acted quickly to prevent the asbestos cases in its inventory from overburdening and monopolizing the judicial resources of the court. Acting pursuant to section 19, California Standards of Judicial Administration[1] (hereafter Standards of Judicial Administration), the court, in August 1984, declared that all litigation then pending or thereafter filed which sought damages for death or injury caused by exposure to asbestos was "complex litigation" that would be assigned to a single judge. In the following years, the court then adopted a series of "general orders" to manage the complex asbestos litigation. (See, e.g., *Wheeler v. Raybestos-Manhattan* (1992) 8 Cal.App.4th 1152, 1154 [11 Cal.Rptr.2d 109] [discussing Gen. Order No. 21, which declared that the theory of market share liability, articulated in *Sindell v. Abbott Laboratories* (1980) 26 Cal.3d 588 [163 Cal.Rptr. 132, 607 P.2d 924, 2 A.L.R.4th 1061], was not applicable to the asbestos cases]; *Asbestos Claims Facility v. Berry &*

---

[1]Section 19(a) of the Standards of Judicial Administration states, "In complex litigation, judicial management should begin early and be applied continuously and actively, based on knowledge of the circumstances of each case."

*Berry* (1990) 219 Cal.App.3d 9, 15 [267 Cal.Rptr. 896] [discussing Gen. Order No. 41, which designated a particular counsel to schedule and supervise discovery on behalf of all other defendants], disapproved on other grounds in *Kowis v. Howard* (1992) 3 Cal.4th 888, 896-897, 899 [12 Cal.Rptr.2d 728, 838 P.2d 250].)

The order at issue in the present case, General Order No. 55,[2] was developed as part of this ongoing process. Adopted by the court in January 1996, after more than 11 years of experience, the order states that an attorney who represents a party in asbestos litigation may file a master complaint or master answer which must be kept in a special file of the court. Thereafter, any party who is represented by counsel who has filed a master complaint or master answer, may file a summary pleading. The summary pleading must include (1) the names of the parties on whose behalf it is filed and against whom it is asserted, (2) notice that a master pleading is on file and that portions of it are being incorporated into the summary pleading, (3) those claims or defenses which are being asserted against the party being

---

[2]General Order No. 55 states, in pertinent part:

"THERE APPEARING TO BE SUBSTANTIAL AGREEMENT AMONG COUNSEL as to the advisability of authorizing the use of Master Pleadings in asbestos litigation, and it appearing to the Court that in view of the nature of this complex litigation Master Pleadings will promote judicial economy and efficiency, and good cause appearing therefor[e], IT IS HEREBY ORDERED, that:

"1. The Clerk shall create and maintain a file which shall contain Master Complaints and Master Answers . . . filed on behalf of parties in asbestos litigation. The file . . . shall be readily available to attorneys and parties involved in asbestos litigation, and to the public generally.

"2. Attorneys representing parties in asbestos litigation may file a Master Complaint or Master Answer, and copies of such pleading shall be served on all counsel in the asbestos litigation. Thereafter, any party represented by counsel who has filed a Master Complaint or Master Answer may file and serve on any adverse party a Summary Pleading in compliance with this General Order, and such Summary Pleading shall have the same force and effect as if the Master Pleading had been filed and served on the adverse party.

"3. A Summary Pleading filed pursuant to this General Order shall contain the following:

"a. The case caption which shall include the names of the parties to the action, the case number, and the name(s) of the party(ies) on whose behalf the Summary Pleading is filed and against whom the Summary Pleading is asserted;

"b. Notice that the Master Pleading is on file with the Clerk of the Superior Court and the date on which it was filed, that a copy of the Master Pleading and of this General Order may be obtained upon request from counsel filing the Summary Pleading, and that designated portions of the Master Pleading are incorporated by reference in the Summary Pleading pursuant to the authority conferred by this General Order. The Summary Pleading shall specify those claims or affirmative defenses contained in the Master Pleading which are being asserted against the party being served;

"c. Such case-specific information as may be necessary to satisfy the pleading requirements of the Code of Civil Procedure."

served, and (4) such case-specific information as is necessary to satisfy the pleading requirements of the Code of Civil Procedure.[3]

Real parties in interest are six individuals who separately filed summary complaints[4] under the authority of General Order No. 55, seeking damages for injuries caused by exposure to asbestos. The complaints vary in their specifics, but in each instance, real party described the causes of action being alleged, and incorporated by reference portions of a master complaint that previously had been filed with the court.

Petitioners are three car manufacturers who were named as defendants in at least one of the complaints discussed above. Each petitioner was served with a copy of the relevant summary complaint, but not the master complaint on file with the court.

Petitioners believed the summary complaint procedure was invalid and they challenged it by filing demurrers and motions to strike. All the demurrers and motions to strike were essentially identical. Petitioners' primary argument was that the summary complaint procedure authorized by General Order No. 55 was invalid under California Rules of Court, rule 981.1,[5] which preempts generally applicable local rules.

The court considered three of the demurrers and motions to strike at a hearing on May 11, 2001. The court orally overruled the demurrers and denied the motions to strike, and entered orders to that effect on May 21, 2001. Notices of entry were served on May 22, 2001.

---

[3]General Order No. 55 appears to have been patterned after a model order proposed by the NCSC in its recommendations. The model order states, "To avoid unnecessary duplication and excessive paperwork, a party may, in any 'Asbestos Case,' incorporate and adopt by reference the entire contents of another pleading in any then-pending related asbestos case assigned to this particular court by filing a pleading containing the appropriate caption and title, with a brief statement to the effect that the entire contents of a specific named pleading in such other related cases are being incorporated and adopted by reference. The clerk of court is in such cases ordered to accept such abbreviated pleadings without the necessity of docket entries, detailed pleadings, or memoranda of law. However, such abbreviated pleadings shall otherwise conform with all applicable Rules of Civil Procedure." (See NCSC Asbestos Recommendations, *supra*, p. 21.)

[4]Real parties in interest are Wilbur Adams, plaintiff in San Francisco Superior Court case No. 319202; Richard Amaral, plaintiff in San Francisco Superior Court case No. 318488; John Cushing, plaintiff in San Francisco Superior Court case No. 318354; Freeman McKinnon, plaintiff in San Francisco Superior Court case No. 318498; William J. Noble, plaintiff in San Francisco Superior Court case No. 318415; and Louis Willis, plaintiff in San Francisco Superior Court case No. 318032.

[5]Unless otherwise indicated, all further rule references will be to the California Rules of Court.

The court considered the remaining demurrers and motions to strike at a hearing on June 8, 2001. Again the court overruled the demurrers and denied the motions to strike orally and entered orders to that effect that same day. Notices of entry were served on June 19, 2001.

On July 31, 2001, petitioners challenged the court's ruling on their demurrers and motions to strike by filing the present petition for writ of mandate, prohibition, or other appropriate relief.

## II. DISCUSSION

### A. *Writ Review Is Appropriate*

■ Real parties in interest urge us to deny writ relief without reaching the merits because writ review is not appropriate. They present three arguments on this issue.

First, real parties in interest contend the petition is not timely. As a general rule, a writ petition should be filed within the 60-day period that is applicable to appeals. (*Reynolds v. Superior Court* (1883) 64 Cal. 372, 373 [28 P. 121]; *Popelka, Allard, McCowan & Jones v. Superior Court* (1980) 107 Cal.App.3d 496, 499 [165 Cal.Rptr. 748].) "An appellate court *may* consider a petition for an extraordinary writ at any time [citation], but has discretion to deny a petition filed after the 60-day period applicable to appeals, and *should* do so absent 'extraordinary circumstances' justifying the delay." (*Popelka, Allard, McCowan & Jones v. Superior Court, supra,* 107 Cal.App.3d at p. 499, italics in original.)

Here, the trial court entered orders rejecting three of petitioners' demurrers and motions to strike on May 21, 2001. Real parties in interest served notices of entry the following day, May 22, 2001. Accordingly, the present petition, filed 70 days later on July 31, 2001, is not timely as to these three demurrers and motions to strike.

However, the petition *is* timely as to the remaining demurrers and motions to strike decided by the court on June 8, 2001. Since all the demurrers and motions to strike are essentially identical, it would serve little purpose to review the court's ruling as to some of them but not others. We will exercise

our discretion to decide all of the orders in question even though the petition is not timely as to some of them.[6]

Second, real parties in interest contend writ review is not appropriate because petitioners have an adequate remedy at law. According to real parties, petitioners could have sought relief in the trial court by way of a motion to "modify, revoke, or amend General Order [No.] 55 through the procedures available under the San Francisco Superior Court's General Orders Governing Complex Asbestos Litigation." We reject this argument because none of the general orders real parties cite provides a method for challenging or modifying a general order. General Order No. 1 establishes the general order system. General Order No. 3 establishes a special file for general orders. General Order No. 7 establishes a central file for "motions which seek a general order." General Order No. 8 states that parties seeking a general order must first obtain leave of the court. We conclude petitioners cannot be faulted for failing to pursue a remedy that has not been shown to exist.

Finally, real parties in interest contend we should decline to reach the merits because any decision we might make "would not result in [a] final disposition as to the Petitioners." It is true that even if this court were to find the summary complaints insufficient, all petitioners stand to gain is an order sustaining their demurrers with leave to amend, not a final disposition of the cases against them. While the fact that a ruling would result in a final disposition *does* support the decision to grant writ relief (see, e.g., *Curry v. Superior Court* (1993) 20 Cal.App.4th 180, 183 [24 Cal.Rptr.2d 495]), real parties have not cited, and we are not aware of, any authority that holds writ review is only available in that instance. The petition raises significant issues of first impression that are likely to arise repeatedly in cases currently pending in the San Francisco Superior Court. Under these circumstances, we will exercise our discretion and grant writ review in order to provide guidance to the trial court in resolving similar claims in pending asbestos proceedings. (Cf. *Babb v. Superior Court* (1971) 3 Cal.3d 841, 851 [92 Cal.Rptr. 179, 479 P.2d 379]; *State of California ex rel. Dept. of Rehabilitation v. Superior Court* (1982) 137 Cal.App.3d 282, 285 [187 Cal.Rptr. 1] ["Mandate will lie in appropriate cases to challenge an order made at the pleading stage of an action. [Citation.] We are informed that other similar lawsuits are pending; no case law on issues argued here exists for the guidance of trial courts. Review by extraordinary relief is therefore appropriate. [Citation]."].)

---

[6]We caution that our decision to grant writ review is unusual and is motivated by the unique circumstances of this case. In future cases, we will continue our past practice and enforce strictly the time limits applicable to writs.

B. *Did the Trial Court Properly Overrule the Demurrers and Deny the Motions to Strike?*

 1. *Rule 981.1*

 Petitioners' first and primary argument is that the trial court should have sustained their demurrers and granted their motions to strike because General Order No. 55 is a local rule proscribed by rule 981.1. Rule 981.1(a) states, "The Judicial Council preempts local court rules relating to pleadings, demurrers, ex parte applications, motions, discovery, provisional remedies, and form and format of papers. No trial court, or any division or branch of a trial court, shall enact or enforce any local rule concerning these fields. All local rules concerning these fields are null and void as of the effective date of this rule unless otherwise permitted or required by statute or Judicial Council rule." Petitioners contend General Order No. 55 is a "local rule relating to pleadings" which is preempted and rendered ineffective by rule 981.1.

 The usual rules of statutory construction are applicable to the interpretation of the California Rules of Court. (*Maides v. Ralphs Grocery Co.* (2000) 77 Cal.App.4th 1363, 1369 [92 Cal.Rptr.2d 542].) Under those rules, our primary object is to determine the legislative intent. (*Ibid.*) "The words of the statute are the starting point. 'Words used in a statute . . . should be given the meaning they bear in ordinary use. . . . If the language is clear and unambiguous there is no need for construction, nor · is it necessary to resort to indicia of the intent of the Legislature. . . .' . . . If the language permits more than one reasonable interpretation, however, the court looks 'to a variety of extrinsic aids, including the ostensible objects to be achieved, the evils to be remedied, the legislative history, public policy, contemporaneous administrative construction, and the statutory scheme of which the statute is a part.' After considering these extrinsic aids, we 'must select the construction that comports most closely with the apparent intent of the Legislature, with a view to promoting rather than defeating the general purpose of the statute, and avoid an interpretation that would lead to absurd consequences.' " (*Wilcox v. Birtwhistle* (1999) 21 Cal.4th 973, 977-978 [90 Cal.Rptr.2d 260, 987 P.2d 727], citations omitted.)

 The term "local rule" is defined by rule 981 to mean "every rule, regulation, order, policy, form, or standard of *general application* adopted by a court to govern practice or procedure in that court . . . ."[7] (Italics added.) The phrase "general application" is not defined by rule 981, but that term

_____

[7]The definition of "local rule" is set forth in rule 981, not rule 981.1. However, since both rules are in pari materia, we will give the term the same meaning in both. (See *Balasubra-*

does have a well-established legal meaning. For a rule to be of general application "it does not have to apply to all the citizens of the state." (*Roth v. Department of Veterans Affairs* (1980) 110 Cal.App.3d 622, 630 [167 Cal.Rptr. 552].) It should, however, apply to "all of the members of a class, kind or order." (*Ibid.*; see also *Tidewater Marine Western, Inc. v. Bradshaw* (1996) 14 Cal.4th 557, 571 [59 Cal.Rptr.2d 186, 927 P.2d 296].)

Here, General Order No. 55 does not apply to all cases that are filed in the San Francisco Superior Court. It does, however, apply to all members of a particular "class, kind or order," namely all asbestos cases that are filed in that court. Since General Order No. 55 is a rule of general application as that term is commonly defined, it is arguably preempted by rule 981.1.

However, courts will not apply the literal language of a statute " 'when to do so would evidently carry the operation of the enactment far beyond the legislative intent and thereby make its provisions apply to transactions never contemplated by the legislative body.' " (*People ex rel. Dept. of Transportation v. Southern Cal. Edison Co.* (2000) 22 Cal.4th 791, 798 [94 Cal.Rptr.2d 609, 996 P.2d 711], quoting *People v. Davenport* (1939) 13 Cal.2d 681, 685 [91 P.2d 892].) " 'A code may strive for comprehensiveness, but exceptional situations will arise.' " (22 Cal.4th at p. 798, quoting *Knox v. Phoenix Leasing Inc.* (1994) 29 Cal.App.4th 1357, 1365 [35 Cal.Rptr.2d 141].) As a result, courts may decline to apply a statute "in those rare cases where 'it is obvious that the Legislature cannot have intended the statute to apply.' " (22 Cal.4th at p. 798, quoting *People v. Oliver* (1961) 55 Cal.2d 761, 766 [12 Cal.Rptr. 865, 361 P.2d 593].)

In this case, two factors lead us to conclude the Judicial Council could not have intended to preempt orders in complex litigation such as General Order No. 55. First, effective January 1, 2000, the Judicial Council adopted rule 1800 et seq. to govern complex civil cases. Rule 1800(a) defines a complex case as "an action that requires *exceptional judicial management* to avoid placing unnecessary burdens on the court or the litigants and to expedite the case, keep costs reasonable, and promote effective decision making by the court, the parties, and counsel." (Italics added.) The Judicial Council could not have intended rule 1800(a) to stand like an unarmed sentry warning courts of impending disaster from complex litigation while leaving them powerless to take the steps necessary to meet the onslaught. Rather, by recognizing the need for "exceptional judicial management" the Judicial

---

manian v. San Diego Community College Dist. (2000) 80 Cal.App.4th 977, 988 [95 Cal.Rptr.2d 837] ["We must construe identical words . . . in different statutes relating to the same subject matter as having the same meaning."].)

Council necessarily acknowledged that courts have the authority to take whatever exceptional management actions are necessary to accomplish that result. We conclude one aspect of that authority is the power to adopt general orders such as General Order No. 55.

This conclusion is supported by a second factor. The Judicial Council adopted rule 1800 et seq. on October 22, 1999. (See Judicial Council of Cal., minutes of meeting (Oct. 22, 1999) pp. 18-19.) On that same date, and as part of the same process, the Judicial Council authorized the Administrative Office of the Courts to distribute to all judges in this state a manual that explains how complex cases should be managed. (See Judicial Council of Cal., minutes of meeting, *supra*, p. 18.) The manual, entitled Deskbook on the Management of Complex Civil Litigation, specifically urges judges faced with a complex case to consider issuing a case management order (which for all intents is the equivalent of a general order) that "[e]stablishes a master pleading system for complaints and answers." (See Judicial Council of Cal., Deskbook on the Management of Complex Civil Litigation (2000) § 3.52, pp. 3-35, 3-37 (hereafter Deskbook).) The Deskbook goes on to state that if the complex litigation "will involve a number of actions filed . . . over a period of time, the court should consider establishing a master file with standard pleadings, motions, and orders." (*Id.*, § 3.55[2], p. 3-40.) Since the Judicial Council has specifically advised judges that when managing complex cases, they could consider issuing orders permitting the use of master pleadings and complaints, it would be illogical to conclude the Judicial Council intended to preclude that same practice when it adopted rule 981.1.[8] In fact, in a report submitted to the Judicial Council at the time it adopted rule 981.1, the Civil and Small Claims Advisory Committee stated that case management orders were not preempted by the rule. (See Judicial Council of Cal., Admin. Off. of Cts., Advisory Com. Rep., Summary of Comments for W99-8, Statewide Uniform Rules in Preempted Fields (Apr. 20, 1999) p. 35.) We conclude rule 1800 complements rule 981.1, reflecting the Judicial Council's response to the administrative burdens of mass tort litigation and its recognition of the benefits of centralized case management systems to facilitate the efficient and timely resolution of such cases. We

---

[8]We also note that the Deskbook expressly discusses asbestos litigation. The manual notes that complex litigation can change in character over several years. As the manual explains, "For example, during the first decade or so of asbestos litigation, it was fair to categorize virtually every asbestos case as provisionally complex. However, some courts have handled so many asbestos cases over the past several decades that those cases no longer need to be treated as complex, in part because specialized management techniques have become a matter of routine in those cases." (Deskbook, *supra*, § 2.02, p. 2-3.) Of course, one of the "specialized management techniques" applied by courts in asbestos litigation is the practice of issuing general orders such as the one at issue in this case.

conclude further that rule 981.1 was not intended to preempt the master complaint process authorized by General Order No. 55.

The conclusion we reach is supported by the rules of statutory construction. ■■■ We are obligated to give a rule of court "a reasonable and commonsense interpretation consistent with its apparent purpose, practical rather than technical in nature, which upon application will result in wise policy rather than mischief or absurdity." (*Lammers v. Superior Court* (2000) 83 Cal.App.4th 1309, 1321 [100 Cal.Rptr.2d 455].) ■■■ The legislative history of rule 981.1 indicates it was adopted by the Judicial Council to "make the practice of law simpler and less expensive for litigants and their attorneys." (See Civil and Small Claims Advisory Com., mem. to the Judicial Council of Cal. (Apr. 20, 1999) p. 2.) The Judicial Council also hoped to "make judicial administration fairer and more efficient." (*Ibid.*) General Order No. 55 was adopted for the same reasons: to promote "judicial economy and efficiency." General Order No. 55 accomplishes this goal by allowing parties to file summary pleadings in a category of cases that, by its nature, frequently involves duplicative pleadings.[9] By interpreting rule 981.1 so that it does not conflict General Order No. 55, all of these goals will be achieved. Such an interpretation results in "wise policy rather than mischief or absurdity." (*Lammers v. Superior Court, supra,* 83 Cal.App.4th at p. 1321.)

Petitioners contend the preemptive effect of rule 981.1 is illustrated by the fact that rule 981.1(b) sets forth exceptions under which the general rule described in rule 981.1(a) does not apply.[10] Although petitioners do not articulate their argument clearly, they seem to contend we should not add to that list by implying an additional exception. (See *Embarcadero Mun. Improvement Dist. v. County of Santa Barbara* (2001) 88 Cal.App.4th 781, 793 [107 Cal.Rptr.2d 6] ["Under well-established rules of statutory construction, where an exception to a general rule is specified by statute, other exceptions cannot be implied or presumed . . . ."].) However, the construction we have adopted does not add to the list of exceptions set forth in rule 981.1(b). Rather, we conclude the Judicial Council could not have intended to preempt General Order No. 55. Since General Order No. 55 is not preempted by rule

[9]The duplicative nature of pleadings in asbestos litigation is illustrated by the fact that all 14 pleadings petitioners filed to support their demurrers and motions to strike were essentially identical.

[10]Rule 981.1(b) states, "This rule applies to all matters identified above except: (i) trial and post-trial proceedings . . . (ii) proceedings under Code of Civil Procedure sections 527.6, 527.7, and 527.8, the Family Code, the Probate Code, the Welfare and Institutions Code, and the Penal Code, and all other criminal proceedings; and (iii) local court rules adopted under the Trial Court Delay Reduction Act."

981.1 there is no need to determine whether the order should be considered an exception under rule 981.1(b).[11]

### 2. *Government Code section 68070 and Code of Civil Procedure section 425.10*

Petitioners' next argument is premised on Government Code section 68070, subdivision (a) which states, "Every court may make rules for its own government and the government of its officers *not inconsistent with law or with the rules adopted and prescribed by the Judicial Council*." (Italics added.) Petitioners contend General Order No. 55 is invalid under Government Code section 68070, subdivision (a) because it is inconsistent with Code of Civil Procedure section 425.10, subdivision (a), which states a complaint must contain "[a] statement of the facts constituting the cause of action in ordinary and concise language." According to petitioners, General Order No. 55 "permits the plaintiff to serve only a summary complaint, which may include a checked cause of action or only part of the statement of facts constituting the causes of action alleged. No facts need be alleged beyond identification of the plaintiffs. There can be no serious dispute that General Order [No.] 55 does not comply with the mandates of Code of Civil Procedure section 425.10."

We are unpersuaded. When a party elects to proceed under General Order No. 55, the operative "complaint" is the summary complaint *and* those portions of the master complaint that have been incorporated by reference into the summary complaint. When those documents are read together, they provide "[a] statement of facts constituting the cause of action in ordinary and concise language" and thus satisfy Code of Civil Procedure section 425.10. Furthermore, it is simply wrong to say that "[n]o facts need be alleged beyond identification of the parties." General Order No. 55 itself states that a summary complaint must contain "[s]uch case specific information as may be necessary to satisfy the pleading requirements of the Code of Civil Procedure."

Petitioners also contend General Order No. 55 is invalid under Government Code section 68070, subdivision (b) which states, "The Judicial Council is encouraged to adopt rules to provide for uniformity in rules and procedures throughout all courts in a county and statewide." We find nothing in this language that undermines the validity of General Order No. 55. While uniformity is undoubtedly an important goal, it is equally important that trial

---

[11]Having concluded that General Order No. 55 is not preempted by rule 981.1, we need not reach real parties in interest's further argument that General Order No. 55 is valid because it is "otherwise permitted or required by statute or Judicial Council rule." (Rule 981.1(a).)

courts be allowed the flexibility to manage and adjudicate complex civil litigation expeditiously and fairly. (See *Asbestos Claims Facility v. Berry & Berry, supra,* 219 Cal.App.3d at p. 19 [courts have the inherent power "to exercise reasonable control over all proceedings connected with pending litigation . . . in order to insure the orderly administration of justice"].) The general policy considerations set forth in Government Code section 68070, subdivision (b) do not render General Order No. 55 invalid.

### 3. *Prejudice*

Petitioners' final argument is that "the use of summary complaints results in undue prejudice to defendants." Petitioners frame this argument generically. They contend defendants in general will suffer prejudice. They do not claim they suffered any particular prejudice, and they do not even refer to the six complaints that underlie the petition.

We reject the contention. A summary complaint notifies a defendant that he or she is being sued, describes the causes of action being alleged, and provides such case-specific information as is necessary to satisfy the pleading requirements of the Code of Civil Procedure. The underlying master complaint then provides the more technical allegations that are needed to support the various causes of action alleged. We see nothing about this process that would necessarily cause prejudice to defendants.

We conclude General Order No. 55 is not invalid and that the trial court properly overruled petitioners' demurrers and denied their motions to strike.[12]

### III. DISPOSITION

The petition is denied.

Stevens, J., and Simons, J., concurred.

Petitioners' petition for review by the Supreme Court was denied March 13, 2002.

---

[12]Petitioners raise one additional argument. They contend General Order No. 55 violates their due process rights because it permits inadequate service of the complaint, and because the pleading resulting from the combination of the master and summary complaints contains no more than vacuous allegations which fail to inform the defendants of the claims against them. We decline to address this argument because petitioners first asserted it in their reply brief. (Cf. *Drake v. Superior Court* (1994) 21 Cal.App.4th 1826, 1832 [26 Cal.Rptr.2d 829].)