Filed 11/12/25

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re A.H., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE, <br><br>     Plaintiff and Respondent, <br><br> v. <br><br> A.H., <br><br>     Defendant and Appellant. | A171639 <br><br> (Contra Costa County Super. Ct. No. J24-00277) |

Minor A.H. appeals from a dispositional order entered after he admitted a probation violation. He argues the juvenile court erred by ordering out-of-home placement in a short-term residential therapeutic program (STRTP) without requiring probation to present a statutorily required "case plan" before or at the disposition hearing.

A.H. acknowledges this appeal is moot because the placement order was vacated while the appeal was pending.[1] However, he asks us reach the merits of his appeal because it presents an issue of broad public interest that is likely to recur and arises in a controversy that is short-lived as to evade

---

[1] The People previously filed motions to: (1) dismiss the appeal as moot; (2) take judicial notice of the juvenile court's minute April 25, 2025 order setting aside the placement order, and (3) file the April 25, 2025 order under seal. We summarily denied the motion to dismiss, but granted the other motions.

1

appellate review.  We agree, and therefore exercise our discretion to address the issue, before dismissing the appeal as moot.  (See *People v. Cheek* (2001) 25 Cal.4th 894, 897–898 (*Cheek*); *In re A.M.* (2020) 53 Cal.App.5th 824, 828 (*A.M.*).)

## BACKGROUND

On May 7, 2024, the district attorney filed a wardship petition (Welf. & Inst. Code, § 602, subd. (a))[2] and, on May 17, amended it to allege that then 16-year-old A.H. committed second degree robbery (Pen. Code, § 211) and grand theft of a person (*id.*, § 487, subd. (c)).  A.H. pleaded no contest to the grand theft count in exchange for the dismissal of the robbery count.  On June 14, A.H. was adjudged a ward of the juvenile court, placed on probation, and released to home supervision in his mother's home with a GPS ankle monitor, subject to various terms and conditions.

On June 24, the probation department filed a notice of probation violation (§ 777).  On June 25, A.H. admitted he violated the conditions of probation by failing to obey his mother, leaving his residence on multiple occasions without probation's approval, and violating curfew.  The court accepted the admissions and on July 18, continued A.H.'s wardship and probation and released him to home supervision.

On August 14, the probation filed another notice of probation violation. August 27, A.H. admitted he violated the conditions of probation by failing to attend two meetings of his mentorship program, testing positive for THC, and smoking marijuana.  The court sustained the allegations and set a disposition hearing for September 11.

---

[2]    Further undesignated statutory references are to the Welfare and Institutions Code.

2

On September 10, the probation department filed a report for the disposition hearing. Among other things, the report described the history of the proceedings and the circumstances of his offenses and violations of probation; probation's attempts to provide A.H. and his mother with rehabilitative services within the community; probation's interviews with A.H. and his mother; and A.H.'s relationships with his parents. The report also indicated that the public defender's office had A.H. assessed by a doctor, who diagnosed A.H. with several mental health conditions including depression, anxiety, and cannabis use disorder.

In addition, probation screened A.H. for eligibility and suitability in an STRTP. Probation reported that while A.H. was technically eligible for such placement due to his mental health conditions, probation opined it was not suitable for him. A.H. had not yet received an assessment or any treatment by his own medical provider, including for possible medication. Probation believed that A.H. should first have an opportunity to receive such treatment from his provider, along with other community resources provided by probation, before being removed from his home and placed "in the highest level of congregate care." Thus, probation recommended that A.H. remain detained in juvenile hall "to allow for his mental health screening to be completed, for a medication assessment to take place and for the minor to become stabilized on any medication prescribed prior to returning home."

On September 11, the court called the matter for disposition, during which hearing it expressed concern about probation's delay in obtaining a mental health assessment for A.H. The court commented that probation's recommendation for A.H. to remain in juvenile hall so that he could receive such an assessment "isn't a real recommendation." The court thus ordered probation to clarify in a report what efforts it made to obtain that assessment

3

for A.H., expeditiously re-screen A.H. for placement, and "provide actual recommendations." The court continued the disposition hearing to September 18.

On September 18, the probation department filed a memorandum indicating that probation again had A.H. screened for eligibility and suitability in an STRTP. Based on that screening, probation found A.H.'s suitability in an STRTP "still highly questionable." However, because A.H.'s mother recently expressed she did not feel safe with her son in her house due to his past negative behavior towards her and was no longer willing to house him, probation concluded it was "left with no other option but determine that placement be ordered." Under the paragraph headed "Recommendation," probation stated it "feels ordering the minor to a STRTP is the most viable option."

On pages 18 and 19 of its memorandum, probation listed its recommendations (numbered 1 through 18), which included: "1. Minor Continued a Ward of the Court" and probation "shall take custody of minor and place him in a Court-Approved home or institution"; "9. Court has reviewed the case plan and finds that placement continues to be appropriate and necessary"; "10. The Probation Department has complied with the case plan by making reasonable efforts to make it possible for the child to safely return home and complete whatever steps are necessary to finalize a permanent placement of the child"; "13. Likely date by which child may be safely returned home 8/22/2025"; and "14. . . . the court finds the services set forth in the case plan include those needed to assist the minor in making the transition from foster care to successful adulthood."

At the continued disposition hearing on September 18, counsel for A.H. opposed probation's recommendation to place A.H. in an STRTP, arguing that

4

A.H. instead should remain in his mother's home and undergo treatment within the community. Following that argument, the court stated it was adopting probation's recommendations in its September 18 memorandum. The court then recited its findings, which tracked the recommendations listed on pages 18 and 19 in the memorandum. It continued A.H.'s wardship, removed him from his home, and ordered him detained in juvenile hall pending delivery to placement.

When the court recited recommendation number 9—"the Court has reviewed the case plan and finds that placement continues to be appropriate"—A.H.'s counsel interjected, stating, "We haven't received a case plan" and "[s]o I think 9 and 10 are, perhaps, pending receipt of the case plan." The court acknowledged, "I don't have a case plan," and deferred ruling on recommendations 9 and 10, as well as 13 and 14, until it received the case plan. The court then scheduled a hearing on October 1 for a "15-day review . . . for a 737[3] and case plan update," as well as to address victim restitution.

At the October 1 hearing, counsel for A.H. addressed the issue of the case plan, stating: "As the court knows, when placement is recommended by the probation department, a case plan must be submitted prior to disposition 48 hours before. That's, I believe, WIC 706.6. I brought up at our disposition that no case plan had been developed under 706.6 or the relevant rule of

---

[3]     Section 737 permits the court to order the temporary detention of a ward pending execution of the order of commitment or other disposition. (§ 737, subd. (a).) If the minor is detained for more than 15 days pending disposition, the court must review the reasonableness of the delay at a hearing held at least every 15 days. (*Id.*, subd. (b).) The court must continue to review the case periodically until the execution of the order of commitment or other disposition. (*Id.*, subd. (d)(2).)

5

court, which is 5.785(a)(1). The court . . . indicated that they believe that probation would develop a case plan and it would be on for approval by the court and review on today's date, and I haven't received a case plan or any copy of a case plan or information about that. So I would be asking for that to be ordered and also that probation be following the law in developing a case plan and ordering placement and doing this by the book rather than more casually providing information. I object to the placement order, and I don't think that the way it's being carried out is appropriate here. And I would appreciate the plan being provided to me and formally acknowledged and reviewed by the court as the statute demands."

The probation officer then asked the court if it could "pass the case just for a while just so that [she] can verify that it is completed," as she did "not know why it was not submitted with the report." The court granted the request and called other matters on calendar.

When the court recalled A.H.'s case, it noted that during the break probation had provided it and the parties with the case plan. The court then stated, "I saw a cover sheet. I didn't look at the actual case plan." It did not comment further on the case plan or the placement order, and instead proceeded to schedule a hearing to address restitution and conduct "our 737 review."

This timely appeal followed.

## DISCUSSION

A.H. argues the dispositional order must be reversed because the juvenile court placed him in an STRTP without complying with the case plan requirements of sections 706.5 and 706.6.

6

**Mootness**

As a threshold matter, we address the issue of mootness.[4]  On April 29, 2025, shortly after A.H. filed his opening brief, the juvenile court set aside the order placing A.H. in an STRTP.  This development renders the appeal moot.  However, " '[i]t is appropriate for an appellate court to exercise its discretion to retain and decide an issue that is technically moot where . . . "the issue is 'presented in the context of a controversy so short-lived as to evade normal appellate review' " [citations]' [citation]"  (*In re Shelton* (2020) 53 Cal.App.5th 650, 673), involves a matter of public interest (*Cheek, supra,* 25 Cal.4th at pp. 897–898), or is likely to recur and continue to evade review (*ibid.*).

For example, in *A.M., supra,* 53 Cal.App.5th 824, a case cited by A.H., Division Three of this court exercised its discretion to consider a moot issue under similar circumstances.  Like A.H. here, the minor in *A.M.* appealed from the juvenile court's order placing him in an STRTP.  (*Id.* at p. 828.)  The minor argued the court erred by following the probation department's recommendation to place him in an STRTP without probation first conducting a child and family team (CFT) meeting as required under sections 706.5 and 706.6 (the same statutes at issue in this case).  (*A.M., supra*, 53 Cal.App.5th at p. 833.)  While the appeal was pending, the minor was released from the STRTP.  (*Ibid.*)  Although the appeal became moot for that

---

[4]    As noted *ante*, after A.H. filed his opening brief, but before the People filed their respondent's brief, the People moved to dismiss the appeal as moot, which motion A.H. opposed and we summarily denied.  Since a summary denial of a motion to dismiss appeal technically is not a determination of the merits of the issue underlying the motion (see *Kowis v. Howard* (1992) 3 Cal.4th 888, 900–901; *Building a Better Redondo, Inc. v. City of Redondo Beach* (2012) 203 Cal.App.4th 852, 865), we reexamine the issue of mootness in this opinion.

7

reason, the court in *A.M.* exercised its discretion to address the propriety of the placement order because the issue presented was one of public importance that was likely to recur while evading appellate review, before going on to dismiss the appeal as moot. (*Id.* at pp. 828, 835–840, citing *Cheek*, *supra*, 25 Cal.4th at p. 898 ["The Court of Appeal . . . exercised its discretion to decide the issue for the guidance of future proceedings before dismissing the case as moot. We will do the same."].)

A.H. argues that *A.M.* is analogous to this case and we should therefore follow the same approach here. We agree.

First, the issue appears capable of repetition. A.H.'s appellate counsel declares that trial counsel has related that "he knew of at least three cases in Contra Costa County with the same issue where the juvenile court ordered a foster care placement without receiving a case plan from probation" and "believes there will be more cases with this issue in the future because probation's position is that they can recommend a STRTP placement without a case plan and then provide a case plan later to cure any legal defect." Further, since an STRTP placement is, by definition, "short-term" (see Health & Safety Code, § 1502, subd. (a)(18); § 11400, subd. (ad)), the issue here involves a controversy that is short-lived as to evade normal appellate review. Additionally, the issue involves a matter of public interest. (See § 16501.1, subd. (a)(1) & (2) [Legislature declaring "that the foundation and central unifying tool in child welfare services is the case plan" and "that a case plan ensures that the child receives protection and safe and proper care and case management, and that services are provided to the child and parents . . . as appropriate, in order to improve conditions in the parent's home, to facilitate the safe return of the child to a safe home or the permanent placement of the child, and to address the needs of the child while in foster care."]; see also *In*

8

*re Robert H.* (2002) 96 Cal.App.4th 1317, 1329 ["[R]elevant policies of juvenile court law require that the court consider 'the broadest range of information' in determining how best to rehabilitate a minor and afford him adequate care."].)

Accordingly, " '[i]t is appropriate for [us] to exercise [our] discretion to retain and decide [the] issue' " in this appeal even though it is " 'technically moot.' " (*In re Shelton, supra,* 53 Cal.App.5th at p. 673.)

**Forfeiture**

As another threshold matter, the Attorney General contends A.H. forfeited his claim that the juvenile court erred in placing him in an STRTP in the absence of a case plan, because he did not raise a timely objection on that basis below. The Attorney General acknowledges that during the September 18 disposition hearing A.H.'s trial counsel pointed out, "We haven't received a case plan." However, the Attorney General asserts that A.H.'s counsel "did not notify the juvenile court that [A.H.] opposed placement in a STRTP without the case plan." (Italics omitted.) It was not until *after* the court placed A.H. in an STRTP that counsel raised that argument. Accordingly, the Attorney General asserts that the claim A.H. now raises was not timely presented to the juvenile court.

A.H., however, maintains that his counsel's comments at the disposition hearing were sufficient to preserve the issue for appeal "because [they] brought the matter to the juvenile court's attention" and "fairly apprised the court about the issue."

A.H. is correct that during the disposition hearing counsel "brought up" to the court's attention the fact that no case plan had been received. However, we do not believe that counsel "fairly apprised the court about the issue," which is whether it could issue a placement order without requiring

9

probation to present a case plan before or at the disposition hearing as required by sections 706.5 and 706.6. A.H.'s counsel did not argue this point during that hearing, when the court ordered A.H.'s placement in an STRTP. While counsel asserted that the court should defer ruling on recommendations 9 and 10 contained in probation's September 18 memorandum, A.H. acknowledges that "recommendations 9 and 10 are distinct from the court's dispositional order placing [him] in a STRTP, which was issued on September 18." Only after the court issued its disposition order did A.H.'s counsel expressly "object to the placement order" based on noncompliance with the statutory case plan requirements. Thus, it is at best arguable that A.H. adequately raised the issue below.

Assuming the claim is forfeited, A.H. asserts we should exercise our discretion to overlook the forfeiture and reach the merits.[5] (*People v.*

---

[5] A.H. also argues his claim is reviewable under the "unauthorized sentence" exception to the forfeiture rule. "[A] sentence is generally 'unauthorized' where it could not lawfully be imposed under any circumstance in the particular case." (*People v. Scott* (1994) 9 Cal.4th 331, 354.) Our Supreme Court explained the rationale for "this 'narrow' category of nonforfeitable error": "The appellate court may intervene in the first instance because these errors 'present[ ] "pure questions of law" [citation], and [are] " 'clear and correctable' independent of any factual issues presented by the record at sentencing" ' and without 'remanding for further findings.' [Citation.]" (*In re G.C.* (2020) 8 Cal.5th 1119, 1130.) While the claimed error in this case presents a question of law due to the absence of any factual dispute, it is not " ' " 'clear and correctable' . . . " ' . . . without 'remanding for further findings.'" (*Ibid*.) As the Attorney General asserts, the remedy for the claimed error would be a remand for a new disposition hearing, during which time the court can again decide to place A.H. in an STRTP. Thus, the placement in an STRTP was not a "sentence" that could not be lawfully imposed under any circumstance in this case. As such, the unauthorized exception to forfeiture does not apply here.

*Williams* (1998) 17 Cal.4th 148, 161, fn. 6 ["An appellate court is generally not prohibited from reaching a question that has not been preserved for review by a party. . . . Whether or not it should do so is entrusted to its discretion."].) The Supreme Court "ha[s] held that a litigant may raise for the first time on appeal a pure question of law which is presented by undisputed facts." (*Hale v. Morgan* (1978) 22 Cal.3d 388, 394.) It has also said that a reviewing court may excuse forfeiture in cases presenting "an important legal issue." (*In re S.B.* (2004) 32 Cal.4th 1287, 1293, superseded by statute on other grounds as stated in *In re M.R.* (2005) 132 Cal.App.4th 269, 273–274; see, e.g., *In re M.R.*, *supra*,132 Cal.App.4th at p. 272 [excusing forfeiture to clarify effect of a statutory amendment]; *In re H.D.* (2024) 99 Cal.App.5th 814, 818 ["We will exercise our discretion to reach the forfeited issue because it involves an important legal issue of statutory interpretation that could reoccur"]; *Sacramento Television Stations Inc. v. Superior Court* (2025) 111 Cal.App.5th 984, 1007 ["We will exercise our discretion to consider [forfeited argument] because it presents a straightforward legal question of first impression."].) Here, the issue presented calls for the interpretation of the case plan requirements in sections 706.5 and 706.6 and rule 5.785 of the California Rules of Court and their application to undisputed facts. Like A.H., we are not aware of any published decision on point. We thus will exercise our discretion to reach the forfeited issue because it involves a straightforward legal question of first impression that could recur.

**Merits**

"A juvenile court's dispositional decision is reviewed for an abuse of discretion." (*A.M.*, *supra*, 53 Cal.App.5th at p. 835.) "The abuse of discretion standard is not a unified standard; the deference it calls for varies according to the aspect of a trial court's ruling under review. The trial court's findings

11

of fact are reviewed for substantial evidence, its conclusions of law are reviewed de novo, and its application of the law to the facts is reversible only if arbitrary and capricious." (*Haraguchi v. Superior Court* (2008) 43 Cal.4th 706, 711–712.) The issue in this case involves the interpretation of statutes and a Rule of Court and their application based on undisputed facts, questions of law that we review de novo. (*Regents of University of California v. State Department of Public Health* (2025) 114 Cal.App.5th 669, 677.)

"In cases involving statutory construction, ' "our fundamental task . . . is to determine the Legislature's intent so as to effectuate the law's purpose.' " . . . We begin by examining the statutory language because the words of a statute are generally the most reliable indicator of legislative intent. . . . We give the words of the statute their ordinary and usual meaning and view them in their statutory context. . . . We harmonize the various parts of the enactment by considering them in the context of the statutory framework as a whole. . . . " 'If the statute's text evinces an unmistakable plain meaning, we need go no further." ' " (*A.M.*, *supra*, 53 Cal.App.5th at p. 835.) "The usual rules of statutory construction are applicable to the interpretation of the California Rules of Court." (*Volkswagen of America, Inc. v. Superior Court* (2001) 94 Cal.App.4th 695, 703.)

Section 706 states: "After finding that a minor is a person described in Section 601 or 602, the court shall hear evidence on the question of the proper disposition to be made of the minor. The court shall receive in evidence the social study of the minor made by the probation officer and any other relevant and material evidence that may be offered . . . ." (Accord, Cal. Rules of Court, rule 5.785(b).) If the probation officer recommends placement

in foster care—which is defined to include an STRTP[6]—the social study "shall include a case plan, as described in section 706.6." (§ 706.5, subd. (a); accord, Cal. Rules of Court, rule 5.785(a)(1).)

Section 706.6 lists the information the case plan "shall include." (§ 706.6, subd. (c)–(q).) The required information includes, for example: an "assessment of the minor's and family's strengths and service needs" and "the type of placement best equipped to meet those needs" (*id.*, subd. (c)(2)); "[a] description of the type of home or institution in which the minor is to be placed," "including a discussion of the safety and appropriateness of the placement" (*id.*, (c)(3)(A)); "[s]pecific time-limited goals and related activities designed to enable the safe return of the minor to the minor's home" (*id.* subd. (c)(5)); "the projected date of completion of the case plan objectives and the date services will be terminated" (*id.*, subd. (c)(6)); and "the services that were provided to prevent removal of the minor from the home" if "out-of-home services are used and the goal is reunification" (*id.*, subd. (c)(12)).

The case plan "shall either be attached to the social study or incorporated as a separate section within the social study." (§ 706.6, subd. (c).) The probation officer "must submit" the social study to the court 48 hours before the disposition hearing. (Cal. Rules of Court, rule 5.785(a)(1)– (2); see also *id.*, rule 5.875(c)(1) ["The [case] plan must be completed and filed with the court by the date of disposition or within 60 calendar days of initial removal, whichever occurs first"].)

Further, "[t]he court must consider the case plan and must find," in cases where the minor is age 12 or older, whether the minor was given the

---

6    Section 727.4, subdivision (d)(1) defines " '[f]oster care' " to mean residential care provided in any of the settings described in section 11402. Section 11402 includes STRTPs.

opportunity to review the case plan, sign it, and receive a copy. (Cal. Rules of Court, rule 5.785(c)(3).)

A.H. argues, and the Attorney General apparently concedes, that the plain language of the above statutes and Rule of Court is mandatory. (See *Jones v. Catholic Healthcare West* (2007) 147 Cal.App.4th 300, 307 ["shall" and "must" are routinely construed as mandatory]; accord, *A.M.*, *supra*, 53 Cal.App.5th at p. 837.) We agree with the parties. So construed, the relevant statutes and Rule of Court require the probation officer to submit—and the juvenile court to consider—a case plan before the court issues a dispositional order if probation recommends placing a minor in foster care.

Here, it is undisputed that neither the probation department nor the juvenile court complied with the statutory scheme. The probation department did not submit a case plan before the disposition hearing on September 18. Nor did the reports that it did submit contain the critical information required in a case plan as set forth in section 706.6. Consequently, the court did not review any case plan before issuing its disposition order placing A.H. in an STRTP. In fact, it is not clear that the court ever reviewed the case plan once it received it during a subsequent hearing on October 1. The court acknowledged it received the case plan but stated it "didn't look at it." In short, by failing to follow the statutory case plan requirements before placing A.H. in an STRTP, the court abused its discretion. (Cf. *A.M.*, *supra*, 53 Cal.App.5th at p. 837 [holding juvenile court abused its discretion in following probation's recommendation to place minor in an STRTP without first conducting a CFT meeting as required under §§ 706.5 and 706.6].)

The Attorney General argues that reversal is not required because A.H. "was not prejudiced by the juvenile court's making the placement decision

14

before reviewing the case plan." In response, A.H. notes that we may follow the approach in *A.M.* in addressing harmless error. As mentioned above, the court in *A.M.* "address[ed] the propriety of the juvenile court's order [placing the minor in an STRTP] because the matter is one of public interest that is likely to recur yet evade review." (*A.M.*, *supra*, 53 Cal.App.5th at p. 839.) The court, however, went on to find the issue of harmless error moot because the minor had been released from his STRTP placement. (*Ibid.*)

Likewise here. Although we exercised our discretion to address the propriety of the juvenile court's order placing A.H. in STRTP in the absence of a case plan, the issue of harmless error is moot because A.H. has been released from his STRTP placement. Thus, as in *A.M.*, "we need not speculate on what would have been recommended" had a case plan been submitted and considered and "whether the juvenile court may have been persuaded to select an alternative placement, as doing so would have little value at this stage." (*A.M.*, *supra*, 53 Cal.App.5th at p. 839.)

## DISPOSITION

Having decided the issues on the merits, we dismiss the appeal as moot.

15

_____

RICHMAN, J.

We concur.

_____

STEWART,  P.J.

_____

MILLER, J.

(A171639P)

Superior Court of Contra Costa County

Colleen A. Gleason, Judge

Matthew Bedrick under appointment by the Court of Appeal for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Jeffrey M. Laurence, Assistant Attorney General, Katie L. Stowe and Eric D. Share, Deputy Attorneys General for Plaintiff and Respondent.